**UNITED STATES of America, Appellee,**

v.

**William COLEMAN and Doris Coleman, Appellants.**

**No. 80, Docket 25733.**

United States Court of Appeals Second Circuit.

Argued Oct. 14, 1959.

Decided Dec. 3, 1959.

Paul J. Curran, Asst. U. S. Atty., So. District of New York, New York City (S. Hazard Gillespie, Jr., U. S. Atty., for the So. District of New York, and Otis Pratt Pearsall, Asst. U. S. Atty., New York City, on the brief), for appellee.

Harry L. Palmer, New York City, for appellants.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and SMITH, District Judge.

J. JOSEPH SMITH, District Judge.

Defendant-appellants William and Doris Coleman, husband and wife, were convicted on trial to the jury in the Southern District of New York, jointly on Counts One and Two of attempting to evade individual income taxes for the years 1952 and 1953 by filing false and fraudulent joint income tax returns and on Counts Four and Five of attempting to evade corporate income taxes for the years 1951 and 1952 owed by their wholly-owned corporation, Blue Grass Cafe, Inc., by filing false and fraudulent corporate tax returns. William was also convicted on Count Three of attempting to evade corporate income taxes for 1952 owed by Brown Twins Restaurant, Inc., of which he was president, by filing a false and fraudulent corporate tax return.

The government proceeded on the net worth theory so far as the individuals were concerned, supported by use of the bank deposit and cash disbursement analysis method as to the two corporations to demonstrate the source of unreported income of the individuals as well as the falsity of the sales figures in the corporate returns.

Defendant Doris Coleman was an experienced bookkeeper, employed during the years in question as head bookkeeper at Leeds Travelwear Corporation, at a salary of $7,000 for 1952 and $8,650 for 1953. She also worked nights at the Blue Grass Cafe. No income was reported from any earnings of William. No receipt of income from either corporation was declared. The government proof purported to show an increase in the joint net worth of the defendants of some $4,000 in 1952, and an additional

$10,000 in 1953, which the government ascribes to unreported dividends from the two restaurant corporations. The government proof purported to show that the corporate returns which showed net losses in the years in question, were falsified primarily by substantial understatement of sales. The defendants' version of the situation was the proof failed to show understatement of sales and that the corporate payments to or for the individual defendants were more than repaid by contributions from Doris' Leeds salary to the corporations to make up in part for their losses.

■ The government's theory was amply supported by evidence which the jury could credit. Indeed, it would have been credulous in the extreme to have accepted defendants' story of straining to meet corporate losses from Doris' salary at a time when the proof showed the purchase even though partly on credit of a $38,000 house, furniture, and an $8,000 Cadillac. Once the jury was satisfied that the entries were false, and that defendants' denial of receipts from the corporations was false in the light of their net worth increases, a finding of intent to evade was not only permissible, but almost inevitable. Cf. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

■ Defendants claim prejudice from refusal of additional time for new counsel to prepare a defense. The case was originally scheduled to commence in the first week in January 1959. The government and Mrs. Coleman's counsel, Mr. Perlmutter, were ready to proceed on January 27. William Coleman's then counsel, Mr. Edwards, was reported ill and the case was referred back to the calendar part. On January 28 the case was assigned for trial to begin February 16. On February 9, Mr. Gill, new counsel, came in and requested three weeks to prepare. This was denied, but trial was adjourned to February 19. A further request for adjournment on February 19 was denied, a jury was drawn, and the case then adjourned to the following Tuesday, February 24, 1959. On February 24, Mr. Meyers, who actually tried the case, came in with Mr. Gill to represent the defendants. A further motion for continuance was denied. Presentation of the government's case took until March 5. No further requests for adjournment were made. The matter of adjournment was within the discretion of the court. Isaacs v. United States, 159 U.S. 487, 489, 16 S.Ct. 51, 40 L.Ed. 229. This discretion was unexceptionably exercised here.

■ The claim is made of error in permitting the prosecution to switch from a net worth theory of proof to a bank deposit and expenditure theory. The short answer to this is that the prosecution never did switch theories, but used the bank deposit and expenditure method to demonstrate not only the false sales entries in the corporate returns, but also the probable source of the individual net worth increases.

■ The prosecution's summing up is attacked as inflammatory and prejudicial. On the contrary, it appears temperate and constructive. The only portion open to criticism is the assurance by counsel that the time between the finish of the Internal Revenue Service investigation and trial was used to make sure that the charges were fully justified by the evidence. This approaches testimony by counsel. It would have been far better had counsel been content to point out the complexity of proof, as he did, and allow the jury to draw its own inferences as to the reason for the time consumed. This one slip in a long trial, of no great apparent weight, is not sufficient ground for reversal. United States v. Greenberg, 2 Cir., 268 F.2d 120.

The charge was clear, comprehensive and adapted to the evidence in the case. The attacks upon it are without substance.

■ Defendant Doris Coleman attacks the denial of her motion to sever Count Three, against William alone. The ruling was within the discretion of the court and clearly correct. No prejudice

is or could be shown. The evidence which came in on this count was admissible in any case on the counts relating to the joint returns.

 Finally, defendants make the broad claim that the jury failed to comprehend the theories on which the case was presented. There is no basis shown for this claim. The theories were fully and carefully covered by the court, both in the course of the trial and in the charge.

The judgments of conviction are in all respects affirmed.