**UNITED STATES of America,**
**Appellee,**

v.

**Charles ROSENTHAL, Defendant-**
**Appellant.**

**No. 391, Docket 71–1877.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 4, 1972.

Decided Jan. 20, 1972.

Peter F. Rient, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., Jay S. Horowitz, and John W. Nields, Jr., Asst. U. S. Attys., of counsel), for appellee.

Steven B. Duke, New Haven, Conn., for defendant-appellant.

Before FRIENDLY, Chief Judge, and MOORE and OAKES, Circuit Judges.

FRIENDLY, Chief Judge:

Charles Rosenthal appeals from his convictions in the District Court for the Southern District of New York, after a verdict, on both counts of an indictment ·charging him with willfully failing to file a federal income tax return for 1962 in violation of 26 U.S.C. § 7203, a misdemeanor, and with willfully attempting to evade or defeat his income tax liability for that year in violation of 26 U.S.C. § 7201, a felony. The sentence was for concurrent terms of nine months on each count.

Rosenthal had gone to work for Overseas Reliance Travel Company ("Overseas") in the early summer of 1962 as a commission salesman on a cash basis, *i. e.*, paying the agency for any tickets he

was about to resell. He later asked Robert Dudley, vice-president of Overseas, whether the agency could extend him credit. Dudley declined but informed Rosenthal of the possibility of getting an airline to issue a special type of Universal Air Travel Plan Card, which would enable him to sell to all-comers tickets on all airlines that were parties to the Plan and remit the price of the tickets to the issuing airline on a monthly basis. Rosenthal applied to Northeast Airlines for such a card, enclosing the required $425 deposit and a misleading credit reference from Dudley. He received his credit card about September 20, 1962, and went into active operation. He personally sold airline tickets with a face value of $3,200 for $2,800. Through David Paige (an advertising man, to whom Dudley had introduced him), Jack Mizrahi, and Dudley, Rosenthal sold more than $11,000 of airline tickets for some $8,700. The purchasers from Paige believed that the tickets had been obtained in exchange for advertising services or represented due-bills, as Rosenthal had told Mizrahi. Paige paid Rosenthal with checks made payable to fictitious names which Rosenthal cashed, without endorsement, with a friend who ran a check-cashing service. Rosenthal also authorized Overseas to buy more than $9,000 of airline tickets on his credit card in order to discharge an indebtedness of $7,000.

Northeast had billed Rosenthal about September 30 and again about October 31, without response. The game came to an end when Northeast's New York district sales manager got Rosenthal to surrender his card in early November, 1962, and return some tickets on December 12. By the year-end Rosenthal had been billed for purchases of more than $45,000, but had made no payments to Northeast. On January 7, 1963, he paid $600 and returned some more tickets. Treating the ticket sales as income, the Government conservatively computed Rosenthal's 1962 taxable income as $15,075.89 and his tax liability as $4,169.63.

Shortly before April 15, 1963, Rosenthal met with Robert Wein, the accountant who had prepared his small income tax returns in previous years. He told Wein that although he had obtained "some" airline tickets and sold them at a discount, he had not earned any money in 1962. When pressed, Rosenthal insisted that he considered his liability for the tickets to be a loan. Wein said that he did not have enough facts to give advice and that Rosenthal would have to make up his own mind about filing a return. There was a later telephone conversation in which Rosenthal said he had thought the matter over, had decided the transaction was a loan,[1] and had concluded not to file.

 Rosenthal contends he was entitled to a judgment of acquittal because in fact he derived no 1962 income since the proceeds of the ticket sales were less than his liability to Northeast. The test is whether he acquired things of value "without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition." James v. United States, 366 U.S. 213, 219, 81 S.Ct. 1052, 1055, 6 L.Ed.2d 246 (1966). Of course, mere failure to pay for property acquired on credit does not cause the transfer of the property to be income. But that is a long way from conducting a business by selling property obtained without real intention to pay and with knowledge of probable inability to do so. If Rosenthal had no intention of paying Northeast—and how he could have had any when he was selling the tickets at large discounts, remains a mystery—the trier of the facts could permissibly find there was no "consensual recognition" even if Rosenthal had daily recited a litany of intention to pay. The James test includes sophisticated procedures for obtaining property by fraudulent means as well as the cruder method of dipping the hand in the till. See United States v. Rochelle, 384 F.2d 748 (5 Cir. 1967), cert. denied, 390 U.S. 946, 88 S.Ct. 1032, 19 L.Ed.2d 1135 (1968); Moore v. Unit-

1. Wein "guessed" that Rosenthal was "under the impression" that Wein also thought this.

ed States, 412 F.2d 974 (5 Cir. 1969). Whether Rosenthal had any intention to pay was a question to be decided by the jury under proper instructions, which were here given without exception or basis for one.

■ Appellant's next contention is that he was at least entitled to an acquittal on the § 7201 felony count. This required proof not merely of willful failure to file a return but of "some willful commission in addition to the willful omissions that make up the list of misdemeanors." Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). Rosenthal's surreptitious method of effecting sales and receiving payments, his failure to maintain any record of his sales, and his incomplete recitation to his accountant in an effort to obtain a favorable opinion afforded sufficient evidence of this for submission to the jury. United States v. Allied Stevedoring Corp., 241 F.2d 925 (2 Cir.), cert. denied, 353 U.S. 984, 77 S.Ct. 1282, 1 L.Ed.2d 1143 (1957); United States v. Procario, 356 F.2d 614, 618 (2 Cir.), cert. denied, 384 U.S. 1002, 86 S. Ct. 1923, 16 L.Ed.2d 1015 (1966). In *Spies*, the Court listed in its illustrations of conduct that would constitute a willful attempt to defeat or evade "concealment of assets or covering up sources of income, handling one's affairs to avoid making the records usual in transactions of this kind, and any conduct, the likely effect of which would be to mislead or conceal." 317 U.S. at 499, 63 S.Ct. at 368. It added that "[i]f the

tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime." *Id.* Here again the question was for the jury and the court submitted it under proper instructions, to which no exception was taken.

■ Rosenthal's other points do not warrant discussion with one exception. Following the order of the counts in the indictment, the judge first submitted the one relating to the misdemeanor of willful failure to file, 26 U.S.C. § 7203. He instructed that if the jury found Rosenthal not guilty on that count, it should proceed no further, but that if it found him guilty, it should consider the count charging the felony of willful attempt to evade or defeat the tax or payment thereof, 26 U.S.C. § 7201. As indicated, the jury found the defendant guilty on both counts, and the judge imposed concurrent sentences of nine months imprisonment. Defendant argues, and we agree, that, on the facts here, the crime defined in § 7203 was a lesser included offense of that defined in § 7201, Sansone v. United States, 380 U.S. 343, 349, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), and that Congress did not intend two punishments for the same crime. However, this does not require a new trial since, in contrast to Milanovich v. United States, 365 U.S. 551, 81 S. Ct. 728, 5 L.Ed.2d 773 (1961), there was no inconsistency between the two counts, and both were properly submitted. All we need to do is to vacate the conviction[2] and set aside the sentence on

---

2. Citing our decisions in United States v. Umans, 368 F.2d 725 (2 Cir. 1966), cert. granted, 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, dismissed as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967), and in United States v. White, 417 F.2d 89 (2 Cir. 1969), cert. denied, 397 U.S. 912, 90 S.Ct. 910, 25 L.Ed.2d 92 (1970), and that in Coleman v. United States, 137 U.S.App.D.C. 48, 420 F.2d 616 (1969), the Government suggests that if we should uphold defendant on this score, the remedy is simply to set aside the sentence on Count I and let the conviction stand. In *Umans* and *Cole-*

*man* the court set aside the convictions, see 368 F.2d at 731, 420 F.2d at 626, and the *White* opinion does not explain why a different course was followed there, 417 F.2d at 94. In light of the comments in Sibron v. New York, 392 U.S. 40, 54–56, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) and Benton v. Maryland, 395 U.S. 784, 790–791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), concerning the collateral consequences of convictions, see also United States v. Sabella, 272 F.2d 206, 210 (2 Cir. 1959), vacation of the conviction on Count I seems to be required. District courts must be exceedingly careful in sen-

**1256**

the misdemeanor count. There is no occasion to remand for resentencing since it is plain that the conviction on the lesser included offense did not lead the judge to impose a heavier sentence on the felony count than he otherwise would.[3]

The judgment is modified by vacating the conviction and sentence on Count I and, as so modified, is affirmed.

tencing on multi-count indictments containing lesser included offenses, when there is a serious possibility that an appellate court may find error in the conviction on the more serious offense. For a recent discussion, see United States v. Corson, 449 F.2d 544 (3 Cir. 1971).

3. A conviction under 26 U.S.C. § 7201 carries a maximum penalty of a $10,000 fine and five years imprisonment.