**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Arthur Michael NEWMAN, Defendant-Appellant.**

No. 72-1938

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 26, 1972.

Rehearing and Rehearing En Banc Denied Dec. 20, 1972.

---

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Meyer Rothwacks, Richard B. Burhman, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

This is a tax fraud case where the government, unable to prove directly that defendant, Arthur Michael Newman, had unreported income, relied on the pluses of expenditures over the minuses of reported income to prove successfully a willfully conceived and executed tax evasion scheme. These are not facile cases for decision, but the schematics of our income taxation require that criminal sanctions be imposed even if rational inferences and not Geiger counter exactitudes justify a conviction.

Defendant, appealing from his conviction, alleges several grounds of error at trial and the imposition of an excessive sentence by the trial judge. With the exception of the sentence, which even the government concedes was improper, we find the conviction error free.

Defendant was indicted for violating 26 U.S.C.A. § 7201 (a felony—willful attempt to evade income tax liability) and 26 U.S.C.A. § 7203 (a misdemeanor—willful failure to file a tax return) and charged with eight separate counts, one for each section for each of the years from 1967 through 1970. After a jury trial, he was found guilty on all counts for 1968–1970 and was acquitted on the two 1967 counts. The district court imposed a sentence of thirty months for each of the three counts of evasion and six months for each of the three counts of failure to file. The sentences for each count of the evasion charges were to be served concurrently, as were the sentences on the failure to file counts, but the six-month sentence on the failure to file counts was to be served consecutively to the thirty-month sentence on the evasion counts.

The government made out its case at trial by utilizing the expenditures method of proving income, there being no direct evidence of defendant's actual source of income for the years in question. The "expenditures method," a simple variant of the "net worth method," focuses on a taxpayer's expenditures during a certain period as proof of income received. See United States v. Penosi, 5 Cir. 1971, 452 F.2d 217, cert. denied, 1972, 405 U.S. 1065, 92 S.Ct. 1495, 31 L.Ed.2d 795. The net worth method, from which the expenditures method is properly derived, focuses on unexplained increases in net worth during a given period as proof of income during that period. The legality, to say nothing of the necessity, of these modes or proof is well established. See Holland v. United States, 1950, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Massei, 1958, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517.

The government, in convincing the jury that defendant must have had taxable income during the years in question, presented evidence of the following at trial. The defendant, while filing no tax returns for the years 1967–1970, had expenditures of over $67,000 during that period. When defendant entered prison in 1965 on a former conviction, a prison admission summary indicated that defendant claimed he had no personal assets at that time. He was released from prison in October, 1966. In 1967 and 1968 defendant purchased automobiles on the installment plan. In 1968 defendant had a conversation in a bar where he bragged to several policemen that he was making $100,000 a year, taxfree. During the years in question defendant purchased many assets in his wife's name and had several large dealings in currency. Despite an exhaustive search, Treasury agents were unable to find any assets held by defendant prior to January 1, 1967, except for an automobile. In sum, the government's evidence, if believed, paints a picture of a man with no assets at the beginning of 1967 who somehow between 1967 and 1970 accumulated enough money (i. e., income) to cover his considerable expenditures. In addition, neither the government's search nor defendant's explanations produced evidence that the money spent was derived from non-taxable sources.

In response, defendant's factual explanation revolves around his claim that all of the money spent between 1967 and 1970 was taken from a cash "hoard" he had amassed during a rather fruitful career as a "professional thief" prior to 1960. The jury, refusing to believe defendant's "hoard" theory, found that the money had in fact been obtained during the years 1968–1970.

■ Defendant's first contention of error is that the trial court should have granted his motion to dismiss the indictment because it was not signed by a duly authorized attorney for the government. Without deciding whether this would constitute error if proven, we reject this claim on the facts. Although belatedly received, the government has submitted satisfactory proof that the attorney in question was duly authorized at the time the indictment bearing his name was signed.

■ Defendant's second contention is that the government failed to establish a prima facie case on the felony counts (§ 7201) which requires proof of affirmative conduct by the defendant. *See* Spies v. United States, 1943, 317 U.S. 492, 63 S. Ct. 364, 87 L.Ed. 418; *see also* Sansone v. United States, 1968, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882. He claims that even if there was unreported income during the period in question, the mere failure to file a return does not constitute a sufficient "affirmative act" to satisfy the statute.[1] Again we must reject defendant's contention on the facts. Although defendant did not file any false *returns*, there is ample proof of *statements* made by defendant to Treasury agents denying any income during the years in question. The government's evidence, accepted by the jury, established that these statements were false. It is clear that making false statements to Treasury agents for the purpose of concealing income constitutes a sufficient affirmative act to satisfy § 7201. *See* United States v. Beacon Brass Co., 1952, 344 U.S. 43, 45–46, 73 S.Ct. 77, 97 L.Ed. 61, 64–65. Falsity in the scheme need not be pinpointed in a particular time sequence so long as it is flagitiously scheme-connected. Clandestinity in affirmation to the government constitutes the necessary affirmative acts to come within the felonious scope of the statute. Newman did more than fail to report, pay, or account. Lying was also an integral part of his evasionary modus operandi. *Spies* does not require more and does not put the government to the duty of spying the minutiae of the defendant's willfulness and evasion. The plus factor needed to establish willful evasion was prevarication in its ultimate consummation.

■ Defendant's next contention is that the government failed to negate

---

[1]. The Supreme Court has articulated the scope and rationale of the affirmative act requirement as follows:

"We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony.

Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation. Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished "in any manner." By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime." Spies v. United States, 1942, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418, 423.

possible non-taxable sources of income and failed sufficiently to prove a likely source of taxable income. The evidence at trial, including defendant's barroom brag of $100,000 yearly income, the extensive but fruitless investigation made by Treasury agents to uncover any possible sources of non-taxable income, and defendant's own denial of receiving any gifts, inheritance or loans during the years in question, is sufficient to meet the government's burden. In addition, defendant's "hoard" theory is sufficiently refuted by the evidence that tended to . show that defendant had no assets as of January 1, 1967. Admittedly, as defendant points out, the government's evidence is hardly overwhelming. We cannot, however, say that the evidence was insufficient as a matter of law to support the jury's verdict, and we think it is clear that a prima facie case was made out by the government. The government does not have to establish every cipher of receipts and disbursements. It must show a surplus over reported income and some sleuthing to explain and find it. Uncle Sam need not, however, be as explicit as Sherlock Holmes was to Watson in recounting the components of the crime.

■ We find no merit in defendant's related claim that allowing both the government's failure to uncover nontaxable sources of income and the defendant's failure to explain adequately the details of his cash "hoard" to operate against him creates an unconstitutional presumption under the doctrine of Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. The entire net worth method of proving taxable income is based on such presumptions and the legality of this method can no longer be seriously challenged. *See* Holland v. United States, *supra*; *cf.* United States v. Penosi, *supra*.

■ In addition, we reject the contention that holding defendant's failure to explain the cash "hoard" against him violates his privilege against self-incrimination by "forcing" defendant to reveal the details of his thefts in order to verify his story. There was ample affirmative evidence supporting the government's claim that defendant had no assets as of January 1, 1967. If defendant seeks to refute this evidence with a story, the details of which might incriminate him, that is his right. The Fifth Amendment has not, however, despite appropriately benevolent interpretation, reached the point of requiring belief in a defendant's allegation of prior criminal activity simply because it might be incriminating to defendant to have to explain the details. The defendant argues in effect: "I didn't receive the money in those years; I stole it years before." Then, when the government demands proof of that statement, he hastens to add, "The Fifth Amendment prevents any further inquiry into the matter. Ipse dixit." We do not believe the Fifth Amendment has such an evidence-furnishing function. Although the Fifth Amendment operates to shield a defendant from anything but absolutely voluntary admissions of his own crimes, once the defendant seeks to use his past crimes as a sword, as was done here, he cannot later retreat behind the shield of his privilege when faced with the need to substantiate his allegations. We have carefully examined defendant's other contentions regarding the sufficiency of the evidence and we find them without merit.

■ Defendant next challenges the use of the prison admission summary to prove his lack of assets when admitted to prison in 1965. He argues that the item should have been excluded as hearsay because the witness who identified and offered the document into evidence had not personally recorded all of the information. This contention must be rejected. The prison admission summary, compiled by prison officials in the regular course of business, fits within the well recognized official records exception to the hearsay rule. *See* Tomlin v. Beto, 5 Cir. 1967, 377 F.2d 276. It is not essential that the offering witness himself be the recorder or even that the witness be certain of who it was that recorded the item. It is sufficient that the offering witness be able

to identify the record as authentic and as made in the ordinary course of business. *See* United States v. Martin, 5 Cir. 1970, 434 F.2d 275, 279. We have held in the past that the trial court has wide discretion when determining the admissibility of business records and we cannot say that the trial judge abused that discretion here. *Cf.* United States v. Middlebrooks, 5 Cir. 1970, 431 F.2d 299, 302, cert. denied, 400 U.S. 1009, 91 S.Ct. 569, 27 L.Ed.2d 622. Defendant further points out that prison admission summaries are occasionally recorded by other inmates rather than by prison officials and should therefore be excluded as too unreliable to be considered as taken in the regular course of business. This contention, while possibly affecting the credibility of the evidence, does not diminish its status as a regularly kept official record. Defendant's complaint can go only to the weight of the evidence and not to its admissibility. *See* United States v. Ellenbogen, 2 Cir. 1966, 365 F.2d 982, cert. denied, 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795. We find no error in the admission of these records.

■ Defendant's final contention, that imposition of consecutive sentences for the two charges was improper, is conceded by the government in its brief, and we agree that the trial court erred in this respect. Where a defendant's conduct violates two separate statutes, it is improper to impose sentences under both statutes where one offense (here, § 7203, the misdemeanor) is, in effect, a lesser included offense of the other (here § 7201, the felony). *See* United States v. Rosenthal, 2 Cir. 1972, 454 F. 2d 1252, 1255. It is clear that "Congress did not intend two punishments for the same crime" *id.* We therefore vacate the three six-month sentences and the convictions for violation of § 7203, the misdemeanor counts. Since it would be improper for the trial court to now undertake modification of the felony counts, *see* Kennedy v. United States, 9 Cir. 1964, 330 F.2d 26; United States v. Adams, 6 Cir. 1966, 362 F.2d 210; *see*

*also* Chandler v. United States, 5 Cir., 468 F.2d 834, 1972, it is unnecessary for us to remand the case to the trial court. The judgment is therefore modified by vacating the convictions and sentences on the three § 7203 counts and, as so modified, is affirmed.

Affirmed in part, modified in part.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.