**UNITED STATES of America, Appellee,**

v.

**Samuel ISRAELSKI, Appellant.**

**No. 676, Docket 78–1373.**

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1979.

Decided April 10, 1979.

Herald Price Fahringer, Buffalo, N. Y. (Lipsitz, Green, Fahringer, Roll, Schuller & James, Paul J. Cambria, Jr., Barbara J. Davies, Buffalo, N. Y., of counsel), for appellant.

Ellen M. Coin, Sp. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Eastern Dist. of New York, Thomas P. Puccio, Atty.-in-Charge, U. S. Dept. of Justice, Organized Crime Strike Force, Eastern Dist. of New York, Brooklyn, N. Y., of counsel), for appellee.

Before FEINBERG, OAKES and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Samuel Israelski appeals from a judgment of conviction following a jury trial before Judge Pratt in the United States District Court for the Eastern District of New York for three counts of corporate income tax evasion and three counts of individual income tax evasion, in violation of 26 U.S.C. § 7201.[1] The judge sentenced appellant to a three-year prison term, with all but 50 weekends suspended, in lieu of a two-year term of probation, and to a fine of $60,000 (the maximum of $10,000 on each of the six counts). Appellant argues that he is entitled to a new trial because he was charged in multiplicitous counts and because of errors in the conduct of the trial. Finding no merit in these claims, we affirm the judgment of the district court.

I

Appellant is the President and majority stockholder of Valerie Sportswear Ltd., a manufacturer of sportswear. During the

---

1. That section provides:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

relevant time periods, Valerie purchased cloth from various suppliers, including Sidan Converting, Inc., whose principal was Jerome Reich. Although there was a sharp dispute at trial, the jury could have found from the evidence before it that Reich and Israelski developed and carried out a scheme whereby Reich would submit fictitious invoices for non-existent goods to Valerie Sportswear, that Israelski would cause corporate checks to be drawn to Reich's company, that Reich would cash the checks, and that the proceeds would be divided as follows: Israelski 90%; Reich, 9%; and the bank teller who would cash the checks in contravention of bank policy, 1%. The jury could have found that the scheme resulted in understatements of Valerie Sportswear's taxable corporate income (by overstating deductible business expenses) of over $18,000 for the fiscal year ended April 30, 1972, over $48,000 for the fiscal year ended April 30, 1973 and almost $23,000 for the fiscal year ended April 30, 1974, causing tax deficiencies in those years, respectively, of $8,781.63, $23,299.71 and $10,911.06. The jury could also have found that Israelski understated his taxable personal income (by failing to report his share of the cashed check proceeds) by over $17,000 in 1971, over $23,000 in 1972 and over $43,000 in 1973, thus evading taxes in those years of $9,138.06, $13,197 and $27,037.

## II

The principal claim on appeal is that appellant was improperly charged twice for the same wrongful act in each of three separate years. Appellant argues that because the charges of personal and corporate tax evasions arose from a single wrongful transaction, the falsified invoices, in each taxable year, the indictment was multiplicitous. The argument aims at more than simply reducing the $60,000 in fines to $30,000 by eliminating three of the six counts in the indictment; appellant urges that if he is correct, there must be a new trial at which the government must choose the theory it intends to follow.

Multiplicity is the charging of a single offense in more than one count. See *United States v. Chrane*, 529 F.2d 1236, 1237 n.3 (5th Cir. 1976). The doctrine is often difficult to apply, see *United States v. DeStafano*, 429 F.2d 344, 348 (2d Cir. 1970), *cert. denied*, 402 U.S. 972, 91 S.Ct. 1656, 29 L.Ed.2d 136 (1971), and has at times resulted in reversal of a conviction. See, e. g., *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). But we do not believe that the doctrine has any application here. In each of the taxable years, appellant engaged in a two-step transaction, which evaded two separate taxes. First, by the writing of a corporate check for non-existent goods, the corporation's net income was reduced by artificially raising costs. Thus, corporate income tax was evaded. Second, by getting 90 percent of the check proceeds back from Reich, appellant received what was, in effect, a dividend of that amount from the corporation. In not reporting the amount returned from Reich on his return, appellant thereby evaded his individual income tax.

That these are two separate violations can be illustrated as follows: If appellant merely obtained false invoices, thereby reducing the apparent corporate net income, but received none of the check proceeds back from Reich, he still would be guilty of willfully causing corporate tax evasion. On the other hand, if the invoices were for actual goods delivered to appellant's corporation, but he nonetheless personally received some of the purchase price back from Reich as a kickback and failed to report the kickbacks as income, appellant would then be guilty of individual income tax evasion. That appellant combined both evasions in a single scheme does not change the fact that there were two distinct violations each time the two steps comprising the scheme were performed. True, the failure to report the 90 percent kickback was necessary to keep the false corporate expenditures secret. But this does not mean that there was no separate evasion of individual taxes. While both tax evasions grew out of the false

invoice scheme, separate steps were necessary to complete each evasion and it was the intentional causing of false information to be filed in each entity's false tax return that was the criminal act in each instance.

It is true, as appellant asserts, that earlier cases decided by this court did not involve factual issues identical with those of the instant case. However, we have upheld convictions for both corporate and personal tax evasions based upon an overall scheme of fraud. See *United States v. Rifkin*, 451 F.2d 1149 (2d Cir. 1971); *United States v. Coleman*, 272 F.2d 108 (2d Cir. 1959). Other circuits have done the same. See, e. g., *United States v. Dolleris*, 408 F.2d 918 (6th Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969); *Hensley v. United States*, 406 F.2d 481 (10th Cir. 1968); *Jones v. United States*, 282 F.2d 745 (4th Cir. 1960), *cert. denied*, 365 U.S. 842, 81 S.Ct. 799, 5 L.Ed.2d 808 (1961). The cases upon which appellant relies do not require a reversal here. The principal of these is *United States v. Chrane*, 529 F.2d 1236 (5th Cir. 1976), in which Chrane was convicted of failing to file his own income tax returns and, in the same two years, failing to supply the Internal Revenue Service sufficient information on Form 1040 (the tax return). The court held that the two offenses charged for each year were actually the same. Chrane's filing of an incomplete return was but one act in each year by a single taxable entity, Chrane. In this case, appellant, as already indicated, caused the evasion of taxes by two entities in each year.

Relying on *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) and *United States v. Rosenthal*, 454 F.2d 1252 (2d Cir.), cert. denied, 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972), appellant also claims that there was an "inconsistency" between the charges. But in *Milanovich* the Court held that Congress did not intend that a person found guilty of stealing federal property could also be found guilty of receiving it. That case does not control here given the separate steps necessary to effect the evasion of the individual and corporate taxes. *Rosenthal* did

not involve inconsistency of counts in an indictment. 454 F.2d at 1255. There, this court held that the misdemeanor of willfully failing to file a tax return, in violation of 26 U.S.C. § 7203, is a lesser included offense of the felony of willfully attempting to evade or defeat a tax, in violation of 26 U.S.C. § 7201. Appellant concedes, as he surely has to, that this case does not present the problem of the lesser included offense.

Appellant's other citations are also inapposite; each is based upon facts that are distinguishable from these. For example, appellant cites *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (reversing conviction for two violations of Mann Act based on transportation of two women across state lines in same trip in same vehicle); *United States v. Squires*, 581 F.2d 408 (4th Cir. 1978) (reversing conviction on four counts of five-count indictment charging transportation in foreign commerce of five counterfeit cashier's checks on same trip); and *United States v. Woods*, 568 F.2d 509 (6th Cir. 1978) (holding multiplicitous three separate counts of possession of a controlled substance based on simultaneous constructive possession of three separate parcels of heroin). The instant case is distinguishable because the violations with which Israelski was charged, while covering the same period, are of two different kinds, requiring different actions on the part of appellant to commit each type.

Finally, appellant argues that even if Reich did return cash to appellant, there was "absolutely no evidence" that he used it for his own benefit rather than place it in the corporate vault. The claim is frivolous. The jury could draw the sensible inference that if appellant received the cash, he used it for his own benefit.

III

Appellant's remaining two claims, which concern the conduct of the trial, require less discussion. The first is that in his summation the prosecutor improperly vouched for the credibility of Reich. The prosecutor pointed out that Reich, though

given immunity, nonetheless risked prosecution for perjury if he was lying at trial. Appellant characterizes these comments as staking the prestige of the United States Attorney's office on Reich's credibility. However, the prosecutor's entire summation was moderate and non-inflammatory. The remarks in question came in the context of telling the jury that they were going to have to analyze Reich's credibility, and noting the factors which would aid them in that analysis. The possibility of a perjury charge is one such factor to take note of in assessing credibility; this circuit has found that statements that a witness is liable for perjury are not improper. See *United States v. Ricco*, 549 F.2d 264, 274 (2d Cir.), cert. denied, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). The main cases relied on by appellant are distinguishable as involving patterns of prosecutorial misconduct, e. g., *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), or statements that the witness' testimony was worth the highest credibility. *United States v. Drummond*, 481 F.2d 62, 64 (2d Cir. 1973). In the instant case, the prosecutor's conduct was fair, and he did not vouch for the witness' credibility. He merely suggested factors for the jury to consider when they made their analysis of his credibility. Finally, since there was no objection to the comments at the time, the point was not preserved for appeal. Even if the comments were arguably improper, the failure to strike them does not rise to the level of plain error.

■  Appellant's final claim is that he was denied material in possession of the government in violation of his constitutional and statutory rights. Reich had made statements to the government describing tax evasion schemes in which he had participated with others, similar to that involving appellant. Appellant was given the statements, but with the names of the other participants redacted. He claims that if he had known the identity of those named by

Reich he could have called them as witnesses, and if they denied the schemes described by Reich, it would have helped impeach Reich's credibility. We find no error in Judge Pratt's refusal to order the government to give the names to appellant. First, it is pure speculation whether the names would in fact have been helpful to appellant. Second, appellant's trial counsel argued that Reich had been involved in illicit dealings with "bad people" and had falsely accused appellant to relieve the pressure on him both from these people and from the government. Therefore, the reason given now for obtaining these names is inconsistent with appellant's position during the trial. Third, even if appellant had obtained the names, it would have been entirely within Judge Pratt's discretion to refuse to allow those named to testify to matters so clearly collateral to the issue of appellant's guilt. Given the collateral nature of any helpful material that might have been developed if the names had been revealed to appellant, the complete absence of any basis for believing that the material would have been helpful even in a collateral way, the need to protect ongoing investigations against those named in the statement by Reich, and the thorough cross-examination of Reich on his motives to lie, we find no reason to reverse.[2]

Therefore, we affirm the judgment of conviction.

---

2.  The district judge did examine in camera the unredacted documents and the prosecutor's affidavit regarding the existence of an investigation. We have done the same. Further, we were informed at oral argument that at least one of the persons named by Reich in the statements has since been indicted.