UNITED STATES of America, Appellee,

v.

Joseph FIORE, Defendant-Appellant.

No. 627, Docket 86–1399.

United States Court of Appeals,
Second Circuit.

Argued Jan. 13, 1987.
Decided June 9, 1987.

Elliott B. Jacobson, Asst. U.S. Atty., S.D. N.Y. (Rudolph W. Giuliani, U.S. Atty., and Kenneth Roth, Asst. U.S. Atty., of counsel), for appellee.

Judd Burstein, New York City (Michael Rose, New York City, of counsel), for defendant-appellant.

Before NEWMAN, MINER and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York following a jury trial. Appellant was convicted of maliciously destroying, by means of fire, certain buildings used in interstate commerce, 18 U.S.C. § 844(i) (1982 and Supp. III 1985) (Counts One through Four), unlawfully using fire to commit a felony (mail fraud) which may be prosecuted in a United States court, 18 U.S.C. § 844(h)(1) (1982) (Count Eleven), and mail fraud in connection with his scheme to defraud Transit Casualty Company with respect to insurance proceeds resulting from the fire, 18 U.S.C. § 1341 (1982) (Counts Five through Ten). Chief Judge Brieant sentenced appellant to concurrent eighteen month prison terms on Counts One through Ten, and to a consecutive one year prison term on Count Eleven.

### Background

This case arises out of the torching of appellant's bar and disco in Wappingers Falls, New York on May 8, 1983. Appellant Joseph Fiore was a car salesman in Poughkeepsie who opened Cymbels Discotheque as a sideline. On the night of the fire, appellant locked the bar between 2:00 and 2:30 a.m. The only two other employees with keys left minutes before appellant and are in no way implicated in the fire. A Poughkeepsie patrolman discovered the blaze between 2:35 and 2:40 a.m. The doors of the establishment were locked, the windows were closed, and there were no signs of forced entry. Uncontroverted evidence established that the fire was ignited at six different points within the bar. Appellant conceded that the fire was the result of arson, that the bar used goods shipped in interstate commerce, and that he used the mails in an attempt to collect under the terms of his insurance policy. The only two issues on appeal are the asserted insufficiency of the evidence and multiplicity of the indictment.

### Sufficiency

The rules for determining sufficiency claims on appeal are well settled. The evidence must be viewed in the light most favorable to the verdict; all inferences must be drawn in the government's favor; the defendant bears a heavy burden; the verdict must be sustained if there is substantial evidence to support it; and, last but not least, the conviction must be sustained if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir.1986); *United States v. Grubczak*, 793 F.2d 458, 462–63 (2d Cir. 1986). Nor is the government required to preclude every reasonable hypothesis which is consistent with innocence. *United States v. Elsbery*, 602 F.2d 1054, 1057 (2d Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979); *United States v. Fiore*, 467 F.2d 86, 88 (2d Cir.1972) (alternate holding), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973).

Viewed in the light most favorable to the government, the evidence established the following: 1) Appellant's unprofitable business was in decline at the time of the fire. 2) Appellant had taken certain initial steps,

including the leasing of additional space, indicating a desire to change and expand his operations. 3) Appellant, the only relevant person possessing a key, left the bar between 2:00 and 2:30 a.m.[1] The fire was discovered between 2:35 and 2:40 a.m. It was first noticed by a patrolman on routine patrol in a police car. The fire department "alarm time" was 2:41 a.m. Uncontradicted expert testimony asserted that the fire began no later than 2:26 and no earlier than 2:21 a.m. 4) The doors were locked when appellant left the premises. 5) The doors were locked and the windows closed when officers and firemen arrived on the scene. That is, there were no signs of forced entry. 6) Although appellant did not appear at the fire scene until two hours after the blaze began, nobody smelled any gasoline odor on his person or noticed any singed hair or eyebrows. No evidence that the fire was set with a trailer or a timing device (which would have eliminated the possibility of gasoline vapors and burns on the arsonist) was presented, but a government expert disputed the notion that a person setting fire to appellant's premises would necessarily have been singed or covered with fumes. 7) A burglar alarm (activated by bodily movement but unable to detect fire) in working order was located on the premises. Appellant stated that he turned it on before he left. The company that monitored the alarm has no record of the alarm being triggered on May 8, 1983. 8) The bar was burglarized three weeks before the fire and the burglar alarm was activated by the burglary. Thereafter and prior to May 8, 1983, the burglar alarm was again activated by subscriber error. 9) Volunteer fireman Kevin Dalton noticed a dazed figure near the fire scene on the morning of the blaze. He could not identify the person or state whether the person was appellant. 10) Gasoline-soaked rags were found in a convenience store dumpster about three miles from the fire scene on May 8. 11) The landlord of Cymbels was in Chapter 11 bankruptcy proceedings at the time of the fire.

■ While the evidence is not overwhelming, the jury's verdict is hardly irrational, and satisfies constitutional standards. The jurors could have found that appellant left the nightclub between 2:22 and 2:30 on the morning of the fire, but that the fire started at 2:21. Since appellant was admittedly the only person left in the club at 2:21, the implications are clear. It is also extremely unlikely that anybody else could have entered the building undetected after appellant departed, since we have to assume, as appellant testified, that the doors were locked and the alarm on. The alarm company records indicate no activation of the alarm on the morning of the fire. In other words, the government is correct in asserting that appellant had the sole and exclusive opportunity to set the blaze.

Appellant was losing money on his club and business was rapidly declining. The jury could rationally conclude that Fiore's various plans for renovation, rather than showing a lack of motive to set the fire, were at the outset or became nothing more than a smokescreen, deliberately planned to establish lack of motive.[2] The jury was free to believe that the dazed figure spotted by fireman Dalton was Fiore himself, or had nothing to do with the fire. The jury could also rationally conclude that the

---

1. In a taped interview, admitted into evidence, Fiore stated that he closed the bar alone between 2:00 and 2:30 a.m., about ten minutes after the last customer left. In his deposition, which was also admitted into evidence, appellant stated that he closed the bar between 2:00 and 2:15 a.m., was alone for ten minutes prior to closing, and that the last people at the premises before he closed were the doorman and the bartender. Doorman Joseph DiGregorio testified that he left Fiore alone at the bar between 2:05 and 2:10 on the morning of the fire.

2. In Fiore's interview with Detective William Holland, taped on the morning of the fire, the following exchange took place:
   Holland: Are you planning on building the business back up?
   Fiore: I'd like to. I was planning on um, enlarging it.
   Holland: Expanding.
   Fiore: It's a matter of record. I had a permit with the zoning board of appeals to ah, put an arcade in the front along with a boutique and about ten or twelve fast food restaurant service [sic].

person who set the fire did so without being singed, and/or that Fiore took a shower during the two-hour period between his departure from and return to the club.

In summary, a rational trier of fact could have found appellant guilty of setting the fire beyond a reasonable doubt, and we accordingly must accept the verdict rendered by the jury that appellant was guilty as charged.

### *Multiplicity*

██ An indictment is multiplicitous when a single offense is alleged in more than one count. *United States v. Israelski*, 597 F.2d 22, 24 (2d Cir.1979). The multiplicity doctrine is based upon the double jeopardy clause of the Fifth Amendment, which "assur[es] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Moreover, "[T]he question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *see also Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).

██ Defendant contends that Count 11 (based on 18 U.S.C. § 844(h)(1)) and Counts 1 through 4 (based on 18 U.S.C. § 844(i)) are multiplicitous. *Albernaz* and *United States v. Marrale*, 695 F.2d 658 (2d Cir. 1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1434, 75 L.Ed.2d 793 (1983), establish a three step inquiry to determine whether Congress intended to authorize multiple punishments for conduct that violates two statutory provisions. 1) If the offenses charged are set forth in different statutes or in distinct sections of a statute, and each section unambiguously authorizes punishment for a violation of its terms, it is ordinarily to be inferred that Congress intended to authorize punishment under each provision. 2) It must next be determined whether the two offenses are sufficiently distinguishable from one another that the inference that Congress intended to authorize multiple punishments is a reasonable one. The *Blockburger* test is employed in making this determination.[3] Under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. 3) If *Blockburger* is satisfied, the final step is to test the tentative conclusion that multiple punishments are authorized against the legislative history of the statutory provisions to discover whether a contrary congressional intention is disclosed. If the legislative history either reveals an intent to authorize cumulation of punishments or is silent on the subject, the court should conclude that Congress intended to authorize multiple punishments. *Marrale*, 695 F.2d at 662; *see also Albernaz*, 450 U.S. at 336–42, 101 S.Ct. at 1141–44.

██ Under the three part test established in *Albernaz* and *Marrale*, there is no multiplicity problem here. The offenses charged are set forth in distinct subsections of a statute and each subsection unambiguously authorizes punishment for a violation of its terms.[4] Moreover, each pro-

---

3. Where, however, a legislature clearly authorizes cumulative punishment under two statutes, regardless of whether the statutes proscribe the "same" conduct under *Blockburger*, cumulative punishments can be imposed under those statutes in a single trial. *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).

4. Section 844(h) provides for a term of imprisonment of not less than one nor more than ten years in the case of a first conviction, and not less than five nor more than twenty-five years, without suspension of sentence or probationary sentence, for subsequent convictions under the subsection. Section 844(i) provides for a term of imprisonment of not more than ten years, or a fine of not more than $10,000, or both; if

vision requires proof of a fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Section 844(h)(1) requires proof of the commission of any felony (in this case mail fraud) "which may be prosecuted in a court of the United States," something not required by Section 844(i). Section 844(i) requires proof of damaging a building involved in interstate commerce, something not required by Section 844(h)(1).[5] *Cf. United States v. Chaney*, 559 F.2d 1094 (7th Cir.1977).

Appellant contends, however, that "an examination of the legislative intent shows clearly that Congress neither envisioned nor endorsed the possibility for consecutive sentences, under Sections 844(i) and (h), for the same fire." Appellant's focus for this contention is the Anti-Arson Act of 1982, Pub.L. No. 97–298, 96 Stat. 1319 (1982).

The Anti-Arson Act of 1982 amended 18 U.S.C. § 844 by inserting "fire or" after "by means of" in subsections (e), (f) and (i), and by inserting "fire or" after "uses" in subsection (h)(1). The purpose of the Act was clearly spelled out in House Report No. 97–678, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2631:

### Purpose of This Legislation

Under current law, arson type offenses may be investigated and prosecuted by Federal officials only when the damage or destruction to the burned property was caused by means of an explosive..... H.R. 6454 amends 18 U.S.C. 844(e), (f), (h) and (i) to provide that, where Federal jurisdiction otherwise exists, damage or destruction caused by fire may also be the subject of Federal prosecution. The jurisdictional circumstances enumerated in these subsections of section 844 ... otherwise remain unchanged.

Senator Glenn explained the need for the Act to the United States Senate on September 22, 1982:

H.R. 6454 is virtually identical to S. 2438 which I introduced in April of this year to clarify that arson involving property used in or affecting interstate or foreign commerce is a violation of the Federal law. Like S. 2438, H.R. 6454 would accomplish this objective by adding the words "or fire" to the Federal Explosive Statute, Title 18, United States Code, section 844.

This legislation would enhance the effectiveness of Federal investigations and prosecutions of arson by eliminating the necessity of proving that substances, such as gasoline, were in an "explosive state" at the time an arson was committed.... Under current law, satisfying this element of proof is quite often an onerous task requiring considerable investigative time and effort....

This legislation will also close a loophole in the law which allows arsonists in certain jurisdictions to escape Federal prosecutions and convictions. Recent court decisions in the ninth circuit and elsewhere have held that the Federal Explosive Statute was not intended to apply to arson cases. For example, based on this interpretation of the statute, the U.S. Court of Appeals, in *United States v. Gere*, 662 F.2d 1291 (9th Cir.1981), reversed the conviction for arson under 18 U.S.C. 844(i) in a case in which a Los Angeles firefighter lost his life, 24 others were injured and property damage totalled approximately $1.5 million.... By clarifying that arsons affecting interstate commerce are covered by this statute, the legislation will preclude further unfortunate decisions based on this interpretation of the statute.

---

personal injury to any person results from the offense, for imprisonment of not more than twenty years, or a fine of not more than $20,-000, or both; and if death of any person results therefrom, for extension of the prison term to any term, including life imprisonment, or for imposition of the death penalty in accordance with 18 U.S.C. § 34 (1982).

5. In general, the *Blockburger* test is to be applied to the statute alone, irrespective of the facts alleged in a particular indictment. *United States v. Bradley*, 812 F.2d 774, 780 (2d Cir. 1987); *United States v. Thomas*, 757 F.2d 1359, 1371 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 66, 67, 88 L.Ed.2d 54 (1985), —— U.S. ——, 107 S.Ct. 78, 93 L.Ed.2d 34 (1986).

128 Cong.Rec. S11,985 (daily ed. Sept. 22, 1982).

Representative Hughes explained to the House of Representatives that:

This bill is designed to eliminate the problem in the prosecution of significant Federal arson cases created by the limitation in the definition of the term "explosive" in the offenses set forth in the Explosive Control Act of 1970.

The definition was designed to broadly define "explosive" to include all situations in which an explosive or material with explosive capacity was used criminally.

The problem that H.R. 6454 is designed to address is that the definition of "explosive" has been interpreted by several courts, including the U.S. Court of Appeals for the Ninth Circuit, to be limited to the "specific evil of bombing" and would not apply to a case in which gasoline or a flammable liquid was used to destroy a building.

It is now necessary to clarify the applicability of the act. Where the bases for Federal jurisdiction exist in a case of arson, it should not make any difference how the fire started. The amendment makes this clear by adding the term "fire" to the term "explosive," as a means of causing the damage to the already covered property.

128 Cong.Rec. H4,957 (daily ed. August 2, 1982).

■ In short, the Anti-Arson Act of 1982 broadened Title XI of the Organized Crime Control Act of 1970, 84 Stat. 956 (1970), which concerned illegal use, transportation and possession of explosives, to include certain uses of fire within its ambit of proscribed activities. The new terms added by the Act clearly overlaid a preexisting statutory framework which by its own language established separate offenses and penalties for using an explosive to (1) "commit any felony which may be prosecuted in a court of the United States," 18 U.S.C. § 844(h)(1), or to (2) "maliciously damage[ ] or destroy[ ] ... any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," 18 U.S.C. § 844(i). In light of this, it is difficult to accept appellant's contention that Congress "neither envisioned nor endorsed" cumulative punishments for violation of the two subsections when it enacted the Anti-Arson Act of 1982.[6]

Nor is this conclusion altered by the legislative history of Title XI of the Organized Crime Control Act of 1970, which initially enacted Section 844. Section 844(h) was in the nature of an enhancement provision carrying over the "stringent provisions" of the Gun Control Act of 1968, Pub.Law No. 90–618, to the explosives area. H.R.Rep. No. 1549, 91st Cong., 2d Sess. 69 (1970), U.S.Code Cong. & Admin.News 1970, p. 4007. Section 844(i), on the other hand, was a "very broad provision" designed to protect "substantially all business property" and to "regulate and protect interstate and foreign commerce." *Id.* at 70; *see also id.* at 37–39. We do not see anything in this legislative history rebutting the normal conclusion that multiple punishments are authorized for activity which violates both Section 844(h)(1) and Section 844(i).

### Conclusion

The judgment of conviction and sentences are affirmed.

---

**6.** Judge Newman's concurring opinion states that the "legislative history [of the Anti-Arson Act of 1982] gives no indication that Congress contemplated consecutive punishments for a single fire that destroys a building in interstate commerce (section 844(i) and also advances some other federal felony (section 844(h)(1))." This statement is true, in the sense that the history does not indicate any specific consideration of the matter by Congress; we are responding here to appellant's contention that this legislative history evidences a *contrary* intent. On the other hand, as we have made clear earlier herein, where two statutes authorize punishment for a violation of their terms and satisfy *Blockburger* because each requires proof of a fact which the other does not, cumulation of punishments is authorized unless the legislative history evidences a *contrary* intent, as it does not here. In any event, we agree with Judge Newman that sentences under sections 1341 and 844(h)(1) of Title 18 can be imposed consecutively.

JON O. NEWMAN, Circuit Judge, concurring:

Fiore violated three statutes. He committed mail fraud, in violation of 18 U.S.C. § 1341 (1982). He committed arson in the course of a federal felony (mail fraud), in violation of 18 U.S.C. § 844(h)(1) (1982). He committed arson by burning a building used in interstate commerce, in violation of 18 U.S.C. § 844(i) (1982 & Supp. III 1985). The majority decides, needlessly in my view, that Congress has authorized consecutive punishments for arson and for arson in the course of a federal felony. As evidence, the majority cites remarks made in support of the 1982 amendment to section 844(i), which broadened the coverage of this provision to punish not only destruction of a building by means of an explosive device but also destruction by means of fire. That legislative history gives no indication that Congress contemplated consecutive punishments for a single fire that destroys a building in interstate commerce (section 844(i)) and also advances some other federal felony (section 844(h)(1)). All it shows is that Congress wanted to make sure that those who destroyed buildings in interstate commerce by means other than explosive devices would not "escape Federal prosecutions and convictions." 128 Cong.Rec. S11,985 (daily ed. Sept. 22, 1982) (Remarks of Senator Glenn). Fiore does not contend that he is immune from federal prosecution or conviction. His point is that he cannot receive cumulative punishments for one fire that violates both sections 844(h)(1) and 844(i).

Whether or not he is right, he has no valid complaint about the sentence he received. Fiore was sentenced to eighteen months concurrently on each of six mail fraud counts. He received a consecutive one-year sentence for committing arson in the course of the mail fraud. The legislative history of the arson-felony statute makes clear that it provides for a penalty in addition to the penalty for the underlying felony. The report of the House Judiciary Committee states that the 1982 amendment to section 844(h)(1) would

> provide that whoever uses a fire, as well as an explosive to commit any felony which may be prosecuted in a court of the United States commits an additional offense and shall be subject to a sentence in addition to the sentence for the predicate offense.

H.R.Rep. No. 678, 97th Cong., 2d Sess. 3, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2631, 2633. This clear statement of legislative intent leaves no doubt that the one-year term for violating section 844(h)(1) was properly added to the concurrent eighteen-month terms for violating section 1341. *See United States v. Marale,* 695 F.2d 658, 662 (2d Cir.1982), *cert. denied,* 460 U.S. 1041, 103 S.Ct. 1434, 75 L.Ed.2d 793 (1983). Once these validly cumulated sentences totaled thirty months, Fiore received no additional punishment when eighteen-month sentences were imposed on the section 844(i) counts to run concurrently with each other and concurrently with the eighteen-month concurrent sentences on the mail fraud counts.

I would reject Fiore's challenge to the sentence solely for these reasons. In all other respects, I concur in the Court's opinion.