Horace Evans Henry and Sue Seitz Henry v. Commissioner.
Henry v. Commissioner
Docket No. 93008.
United States Tax Court
T.C. Memo 1964-170; 1964 Tax Ct. Memo LEXIS 167; 23 T.C.M. (CCH) 1004; T.C.M. (RIA) 64170; June 19, 1964
*167 George F. Henry, Jr., for the petitioners. Ford P. Mitchell, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioners' income tax for the year 1957 of $63,679.33 and an addition to tax for such year in the amount of $31,839.66 under the provisions of section 6653(b) of the Internal Revenue Code. [1]
Both parties have made certain concessions and consequently a decision under Rule 50 will be required. Petitioners have stipulated to a substantial understatement of taxable income for 1957, and questions now remaining in dispute are building expenses in the amount of $3,000, cost of lots sold in the amount of $5,000, and whether any part of the underpayment of tax for 1957 was due to fraud within the definition of section 6653(b), supra. Some of the facts have been stipulated and are so found. Petitioners are husband and wife who lived in Greenville, Mississippi, during 1957 and filed their joint Federal income tax return for such year on the cash basis with the district director of internal *168 revenue, Jackson, Mississippi. Petitioner Sue Seitz Henry did not have income of her own during such year and references herein made to petitioner refer to Horace Evans Henry. Petitioner testified that he had "been in the business of selling houses" since 1948, and during 1957, in addition to operating a small farm, he was engaged in the business of subdividing, constructing residential houses for sale, and selling them. Petitioner had sold only about 4 houses in 1956, but he sold at least 29 houses during the year in issue at prices ranging from a low of $6,650 to a high of $11,500 and at an average price of more than $7,600 each. [2]
Petitioner did not keep adequate records. When first approached by an internal revenue agent in the summer of 1959, petitioner produced a cash journal and bank statements, ledger sheets and cancelled checks from two of the five banks with which he was doing business, representing to the agent that *169 the above constituted all of his books and records. Petitioner represents and the parties have stipulated that petitioner determined the total receipts from his business in 1957 by use of the bank deposits method, but in deducting bank loans from bank deposits petitioner included renewals of loans in full, so that bank loans were substantially overstated and bank deposits substantially understated. By such method petitioner reported net profit from the sale of houses in 1957 as follows: Total receipts
$136,360.68
Material purchased
$87,178.51
Cost of labor
14,417.55
101,596.06
$ 34,764.62
Brought forward
$ 34,764.62
Deductions: Interest
$ 2,927.91
Taxes and insurance
3,665.08
Depreciation
4,955.00
Subcontracts
7,839.39
Misc. Sub. roads -
piping
11,716.48
Truck and tool ex-
pense
2,565.76
33,659.62
$ 1,105.00
Respondent redetermined petitioner's correct total receipts by the bank deposits and cash expenditures method, and the parties are now agreed, and have stipulated, that petitioner's correct net profit from the sale of houses in 1957 was at least $62,369.98 (instead of $1,105) computed as follows: Total receipts
$212,313.94
Merchandise purchased
$78,532.76
Taxes, interest and insurance
7,424.71
Depreciation
3,850.27
Truck, car and tool expense
2,586.90
Misc. building expense
11,379.56
Subcontract and labor
22,174.16
Cost of lots sold
14,695.60
Misc. rent expense
300.00
Total expenses not in dispute
$140,943.96
Less: Building expenses in dispute
3,000.00
Depreciation expenses in dispute
1,000.00
(This item has now
been conceded by pe-
titioner on brief)
Cost of lots in dispute
5,000.00
Total expenses in dispute
9,000.00
149,943.96
Net profit
$ 62,369.98
*170 and respondent contends that such correct net profit was $71,369.98. Respondent concedes that petitioner incurred a 1957 farm loss of $2,478.72, and the parties stipulated that petitioners understated their taxable income for 1957 in at least the amount of $59,891.26. In 1959 when the investigation of this case was started, petitioner did not reveal the existence of or turn over any records concerning bank accounts at the Greenville Bank and Trust Company, Greenville, Mississippi, Peoples Savings Bank, Starkville, Mississippi, or an account in his wife's name at Security State Bank, Starkville, Mississippi. During the course of his investigation, the internal revenue agent noticed that several items of expenses could not be traced to checks and that one such item was noted "Peoples State Bank." Further inquiry revealed the existence of the other two undisclosed accounts and the parties have now stipulated that petitioner's total receipts from the sale of houses in 1957 in the amount of at least $212,313.94 was made up as follows: Bank
Deposits
First National Bank & Trust Co., Greenville, Miss.
$156,587.69
Greenville Bank & Trust Co., Greenville, Miss.
980.77
Security State Bank, Starkville, Miss.
50,730.88
Security State Bank, Starkville, Miss.
845.00
Peoples Savings Bank, Starkville, Miss.
532.00
Total deposits in 1957
$209,676.34
Brought forward
$209,676.34
Add - Payments on loan by cash
First National Bank & Trust Co.
$46,500.00
Security State Bank
7,891.00
54,391.00
Payments on equipment by cash
2,500.00 [3]
Payments on mortgage by cash
4,292.10
6,792.10
Receipts
270,859.44
Less - Loans
First National Bank & Trust Co.
$48,000.00
Security State Bank
1,000.00
First Federal Savings & Loan Assoc.
4,945.50
Transfer of funds
4,600.00
58,545.50
Total receipts
$212,313.94
*171 Petitioner issued a check on August 27, 1956, and another on November 19, 1956, each in the amount of $1,500 and each payable to East Mississippi Lumber Company for materials included in the 29 houses sold in 1957. By agreement between petitioner and such company, these checks were not to be cashed until authorized by petitioner and they were not in fact cashed until February 15 and January 16, 1957, respectively. In connection with pipe or sewage pipe to service and improve 20 of the 29 houses sold by petitioner in 1957, petitioner purchased in 1956 pipe, fittings and accessories in the total sum of $3,480 which materials extended to and serviced an additional 25 lots not included among the 1957 sales, and consequently 20/45ths of this amount, or $1,546.67, is properly includable as a deduction for land development costs in computing petitioner's 1957 net profits. Petitioners overstated *172 their total receipts in 1958 by more than $54,000, but the parties are now agreed that they also overstated their business expenses for such year by an even larger amount, so that the net result was an understatement of petitioners' taxable net income for such year. George F. Henry, Jr., who is the petitioner's brother, represents them in this case. He also prepared their returns for 1957 and 1958. The 1957 return was prepared from information supplied to him by petitioner on a work sheet on which petitioner had computed and listed total receipts and expenses for 1957, which totals were identical with those shown on petitioners' 1957 return. George F. Henry, Jr., did not see or examine the bank ledger sheets relating to loans and loan renewals until after the investigation of this case had been started. Petitioners' substantially understated their taxable income for 1957 by knowingly understating their receipts, and a part of the underpayment of tax for 1957 was due to fraud. Petitioners now freely admit to the bulk of the items which go to make up their 1957 understatement of net taxable income, but argue that such understatement was all due to lack of understanding, inexperience *173 and carelessness on the part of petitioner Horace and his brother, who prepared the returns and now represents them. We have carefully reviewed the entire record and can not agree with petitioners' conclusions, for the evidence is clear and convincing that such understatements were knowingly arrived at and that at least a part of the underpayment of tax for the taxable year 1957 was due to fraud. To enumerate some of the circumstances which have compelled us to this conclusion, we note the magnitude of the understatements of gross and net taxable income, and that the simple mathematics of number of houses sold times average selling price demonstrates these understatements. We note also the nondisclosure and apparent attempted concealment of three of petitioners' five active bank accounts, when the investigation was commenced in 1959. We note next that petitioner Horace told the internal revenue agent investigating the case that his brother George had prepared the 1957 return from information given him by Horace on a slip of paper, showing total sales, total deposits, loans, etc., and exhibited such paper to the agent, who observed that the figures thereon agreed exactly with *174 the figures shown on such return. At the time of the trial, petitioner Horace denied that he had given such paper to his brother George and testified that he had turned over to him all of his underlying records, such as cancelled checks and bank statements. Later in the trial George F. Henry, Jr., took the stand in petitioners' defense, and stated that the large understatement of net taxable income in 1957 had been occasioned by including renewals of bank loans with loans. In this connection he testified: So I am merely stating that if there was any errors made that I made them myself. There was, of course, no fraudulent intent on his part, nor upon mine. It is a terrible thing for a person who has made as many income tax returns as I have to find that I was that ignorant about it, but I had never seen a bank ledger of loans and never had occasion to even visualize one, and I did not see these until after this investigation started, and I still at that time thought that it was exactly like my brother had thought it was when he added up the loans and told me how many loans he had made. The loans being made doesn't show on the bank statements and I did not have these loan ledgers, *175 but had asked him to go to the bank and let them show him and tell me how many loans he had made. Well, in that period he mistakenly added all the increases and that is the cause of the discrepancy in the income of these two years. Thus, there is a direct conflict between the testimony of the brothers, and petitioners have not even introduced the bank statements or loan ledgers into evidence to support their contention of honest mistake in including renewals of loans as loans. Petitioners argue that their large overstatement of total receipts in 1958 proves that their 1957 mistakes were honestly made, but their only explanation of the even larger overstatement of 1958 expenses was George F. Henry, Jr.'s testimony that in preparing the 1958 return he had included many land purchases with purchases of building materials. We are unimpressed with such testimony and argument. As to the 1957 building expenses in the amount of $3,000, which are still in issue, we have found that there was an agreement between petitioner Horace and the East Mississippi Lumber Company at the time of the delivery of the two $1,500 checks, and payment on said checks did not occur before the condition imposed *176 by that agreement was satisfied. We perceive no differences between this situation and that being dealt with in Eagleton v. Commissioner, 97 F. 2d 62, where the Court said, in affirming 35 B.T.A. 551: these checks were not paid during * * * [the year of their delivery] and before the end of that year there was an understanding that they would not be paid during the year. In this situation there is no basis for a claim of deduction during that year where the tax return is on a cash basis. * * * See also Estate of Modie J. Spiegel, 12 T.C. 524. We conclude that this additional $3,000 of building expenses is properly deductible in 1957, the year in which petitioner covered the checks and told the payee to proceed to negotiate them, and they were in fact presented and honored. As to the item "Cost of lots in dispute $5,000," we have made it clear by our findings of fact that $1,546.67 is properly allowable. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. The record shows the selling price of only 26 of the 29 houses, but as there is no indication of abnormal prices on the other 3, the average of over $7,600 for each house is arrived at from the selling prices of the 26 houses which are known.↩
3. In the statutory deficiency notice this item was shown as $4,500. Respondent argues on brief that petitioners have failed to prove that less than $4,500 was spent and asks that we find such larger figure. Needless to say, such a repudiation of a stipulated figure will not be countenanced.↩