GERALD D. BISHOP, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bishop v. Commissioner
Docket No. 17691-84.
United States Tax Court
T.C. Memo 1986-2; 1986 Tax Ct. Memo LEXIS 606; 51 T.C.M. (CCH) 229; T.C.M. (RIA) 86002; January 2, 1986. Donald A. Forrest, for the petitioner. Wesley J. Lynes, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined additions to tax under the provisions of section 6653(b) [1] for the taxable years 1979 and 1980 in the amounts of $9,427.58 and $15,615.56, respectively. The sole issue before us is whether petitioner is liable for the additions to tax for fraud determined by the Commissioner. [2]
*607 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated by this reference. Gerald D. Bishop (petitioner) resided in West Memphis, Arkansas, at the time his petition was filed. Petitioner was married during the taxable years in issue, but filed separate Federal income tax returns for both years. Petitioner, who has only an 8th grade education, has been engaged in the business of hauling freight in interstate commerce since 1970 or 1971. He represented other truckers as a truck broker and individually operated two or three trucks. Since 1975 petitioner has operated his business from West Memphis, Arkansas. During the taxable years in issue petitioner employed John Wilkerson (Wilkerson), a certified public accountant, to handle the bookkeeping and tax return preparation for the business. Periodically, Wilkerson would request, and petitioner would deliver, the information necessary to maintain the books of the business and to prepare the necessary tax returns. Petitioner did not actively assist Wilkerson in the preparation of the tax returns. He has never prepared his own tax returns. *608 During the years in issue, petitioner maintained a checking account with the Bank of West Memphis for use in his business in the name of Bishop Truck Brokerage. On June 8, 1979, petitioner opened a checking account with the First State Bank of Henderson, Tennessee, in the name of Bishop Leasing. On January 21, 1980, he opened another checking account with the Bank of West Memphis, Arkansas, in the name of Haro Trucking. During the taxable years in issue petitioner deposited income from his trucking business in both the Bishop Leasing and Haro Trucking accounts without notifying Wilkerson. Petitioner also paid certain deductible business expenses out of these accounts. Petitioner revealed the existence of the Bishop Leasing account to Wilkerson on April 9, 1981. Wilkerson did not learn of the Haro Trucking account until after the income tax returns for the years in issue had been filed. When he did learn of the Bishop Leasing and the Haro Trucking accounts, Wilkerson understood that they were the personal accounts of petitioner into which no business funds were deposited or withdrawn. Petitioner did nothing to dispel this misconception. Throughout the years in issue petitioner *609 periodically transferred funds from the Haro Trucking account to the Bishop Truck Brokerage account. Several of the deposit slips representing these transfers included a notation to the effect that the transfers were loans. Petitioner did not advise Wilkerson of the nature of these transfers, but when asked specifically by Wilkerson about one such transfer of $5,000, petitioner acknowledged that this amount represented currently taxable income to his business. He did not advise Wilkerson that other transfers also representing currently taxable income to the business were made. On May 20, 1980, petitioner received proceeds from an insurance policy in the amount of $48,501.15 for storm damage to his place of business. He deposited this amount in the Haro Trucking account. On the same day, he transfered $12,000 to the Bishop Truck Brokerage account and this amount was subsequently used to pay for repairs to his place of business. Shortly thereafter, he purchased two $10,000 certificates of deposit from the First State Bank of Henderson and one $10,000 certificate of deposit from West Memphis Savings and Loan. He did not inform Wilkerson of the receipt of the insurance proceeds *610 or the purchase of the certificates of deposit until after the income tax returns for the years in issue were filed. When the certificates of deposit purchased with the insurance proceeds, along with other ones that had been previously purchased, matured, petitioner rolled over the certificates plus accrued interest into new certificates. Sometime subsequent to the filing of petitioner's Federal income tax returns for the taxable years 1979 and 1980, the Commissioner began to examine those returns. The revenue agent assigned to the audit of the returns contacted Wilkerson to obtain his assistance. During a visit with Wilkerson, the revenue agent presented a document request, which included a request for all of petitioner's "checking accounts, savings accounts and savings certificates." Petitioner was not present at this meeting, but, in the presence of the revenue agent, Wilkerson telephoned petitioner. During this telephone conversation, Wilkerson asked if petitioner had any checking accounts other than the Bishop Truck Brokerage account and if he had any "savings accounts," or words to that effect. Wilkerson did not use the terms "savings certificate" or "certificate of deposit" *611 in his conversation with petitioner. Petitioner gave a negative response. Wilkerson was aware of the Bishop Leasing and Haro Trucking accounts, but, did not inform the revenue agent that they existed. Two days after presenting the document request to Wilkerson, the revenue agent paid a personal visit to petitioner at his place of business. Prior to this visit the revenue agent had obtained information culled from Forms 1099 filed with the Commissioner by First State Bank of Henderson and West Memphis Savings and Loan reporting interest earned by petitioner on the certificates of deposit. Petitioner had received copies of the Forms 1099 from the two financial institutions and either failed to open them or ignored them. During his visit with petitioner the revenue agent asked if petitioner had any additional bank accounts or savings accounts or any other savings. Petitioner answered that he did not. At this time the revenue agent confronted petitioner with the interest information obtained from the Forms 1099. Only then did petitioner acknowledge the existence of the certificates of deposit. Petitioner claimed that he did not equate a certificate of deposit with a "savings account. *612 " Furthermore, petitioner told the revenue agent that his reason for not reporting the interest income from the certificates of deposit was his belief that he was not obligated to report interest until the certificates were redeemed. Reasonably satisfied with this explanation, the revenue agent told petitioner to gather all of the documentation he had concerning certificates of deposit and savings and checking accounts in preparation for review by the revenue agent. When the revenue agent returned approximately 10 days later petitioner produced the requested documentation, also revealing for the first time the existence of the Bishop Leasing and Haro Trucking checking accounts. The audit of petitioner's returns for the taxable years 1979 and 1980 resulted in an increase in the income tax liability for each year based upon adjustments for unreported income from the trucking business, unreported interest income, and a decrease in the allowable depreciation deduction based upon the proper capitalization of repair expenditures and reduction of basis due to the receipt of insurance proceeds. Petitioner concurred with the adjustments and paid the additional tax due. Subsequently, the *613 Commissioner issued a statutory notice of deficiency in which he determined that petitioner was liable for additions to tax under section 6653(b). OPINION The sole issue before us is whether petitioner is liable for the additions to tax under section 6653(b) for fraud. The burden of proving fraud is on respondent, and he must do so by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). This burden may be met by showing that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes, and that there is an underpayment of tax. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Rowlee v. Commissioner80 T.C. 1111, 1123 (1983); Acker v. Commissioner,26 T.C. 107, 112 (1956). When fraud is determined, as in the instant case, for more than one taxable year, respondent must show that some part of an underpayment was due to fraud for each taxable year for the corresponding addition to tax to be upheld. Professional Services v. Commissioner,79 T.C. 888, 930 (1982); *614 Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The existence of fraud is a question of fact to be resolved upon a consideration of the entire record. Rowlee v. Commissioner,supra at 1123; Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner,67 T.C. at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States,317 U.S. 492 (1943); Gajewski v. Commissioner,67 T.C. at 200; Stone v. Commissioner,supra at 223-224. As proof of his assertion of fraud, respondent relies on the reticence of petitioner *615 with his accountant and the revenue agent concerning the existence and nature of the Bishop Leasing and Haro Trucking accounts as well as the existence of the certificates of deposit. Misrepresenting facts, failing to inform or otherwise misleading a taxpayer's return preparer or a revenue agent can be persuasive evidence of fraud. Cf. United States v. Newman,468 F.2d 791, 794 (5th Cir. 1972) (misleading statements to Treasury agents for the purpose of concealing income constitutes a sufficient affirmative act to satisfy sec. 7201); Henry v. Commissioner.T.C. Memo. 1964-170, affd. 362 F.2d 640, 643 (5th Cir. 1966) (hiding bank accounts from revenue agents evidence of fraud).[3] Nevertheless, based on all of the facts and circumstances, we find that respondent did not adequately prove that petitioner fraudulently underpaid income tax. In every instance allegedly demonstrating fraudulent intent there is some plausible nonfraudulent reason for petitioner's actions. Our consideration of these reasons confirms our holding that respondent failed to adduce clear and convincing evidence that petitioner acted fraudulently. *616 Clearly, petitioner did not provide full and complete information to his tax return preparer. He did not dispel Wilkerson's misconception that the Bishop Leasing and Haro Trucking checking accounts were personal accounts. He also did not inquire as to the proper treatment of the insurance proceeds and the interest earned on the certificates of deposit. However, he explained his failure to tell Wilkerson of the receipt of the insurance proceeds stating that he did not know it was significant in regard to his tax liability. Petitioner also believed that he was not required to report the interest income from the certificates of deposit because the principal and interest on these certificates were rolled over into new certificates. The failure of petitioner to readily reveal the existence of the certificates of deposits when the revenue agent requested all "savings accounts" raises an inference of fraudulent intent. However, based on our review of the record, we believe he may have been merely answering the specific question put to him and no more, suspecting, perhaps, that the agent probably intended for the term "savings accounts" to encompass all manner of savings vehicles. *617 We agree with respondent that the failure of petitioner to disclose the existence of the Bishop Leasing and Haro Trucking accounts to the revenue agent promptly when asked is evidence of fraud. The belated disclosure of these accounts upon the second visit of the revenue agent does not excuse the earlier misrepresentation. However, it is possible that petitioner failed to disclose the existence of the additional bank accounts to the revenue agent on the assumption that Wilkerson had already done so. Wilkerson knew the accounts existed even if he wrongly understood them to be used by petitioner for personal transactions. We emphasize that it is not our responsibility to find excuses for the actions or inactions of petitioner. We do not condone much of what he did or failed to do. Petitioner should have been completely forthright with Wilkerson and the revenue agent. Providing full and adequate disclosure of all transactions possibly touching upon a taxpayer's tax liability to a return preparer or other tax advisor, when one is relied upon, is the only way to assure an accurate return of income. It is also desirable, of course, that taxpayers readily assist the Commissioner in *618 audits of returns. Nevertheless, based on our review of the entire record, we find that respondent has not proved by clear and convincing evidence that petitioner fraudulently understated his income for the taxable years 1979 and 1980. In summary, we have examined the entire record before us and find that respondent has not met his burden of proof. Admittedly, a strong suspicion of fraud might arise from the record before us. However, the standard of proof required of respondent in this case, proof by clear and convincing evidence, is a high one. "[C]ourts will not sustain findings of fraud upon circumstances which at most create only suspicion." Ross Glove Co. v. Commissioner,60 T.C. 569, 608 (1973). Though it falls short of fraud under section 6653(b), we do not condone petitioner's conduct. Were the issue before us, and particularly in light of the different standard of proof required, we would be inclined to impose the addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a). However, that is not this case. Decision will be entered for the petitioner.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and all rule references are to this Court's Rules of Practice and Procedure. ↩
2. Petitioner understated his taxable income for the taxable years 1979 and 1980. The deficiencies in Federal income tax for the taxable years 1979 and 1980 have been paid and are not in issue.↩
3. Cf. also Estate of Vella v. Commissioner,T.C. Memo. 1982-73 (taxpayer misled revenue agent); Grancich v. Commissioner,T.C. Memo. 1978-92, affd. without published opinion 649 F.2d 867↩ (9th Cir. 1981) (failure to inform return preparer of extortion income demonstrative of fraudulent intent).