JAMES M. CLARK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JAMES M. CLARK, TRANSFEREE OF ASSETS OF J. M. CLARK INVESTMENT CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clark v. Commissioner
Docket Nos. 8585-84; 8586-84.
United States Tax Court
T.C. Memo 1988-67; 1988 Tax Ct. Memo LEXIS 93; 55 T.C.M. (CCH) 161; T.C.M. (RIA) 88067; February 23, 1988; As amended May 25, 1988 Edward R. Joyce andd James F. Nangle, Jr., for the petitioner. Robert J. Burbank, for the respondent. GERBER
MEMORANDUM FINDINGS *94 OF FACT AND OPINION GERBER, Judge: Respondent, in a statutory notice of deficiency and statutory notice of transferee liability, both dated December 30, 1983, determined the following deficiencies and liabilities for James M. Clark, individually and as the transferee of J. M. Clark Investment Corporation, Transferor: James M. Clark, Individually - Docket No. 8585-84
Addition to Tax [1]
Year
Income Tax
Sec. 6653(b) [2]
1976
$ 10,687
$ 5,344
1977
33,780
16,890
1978
53,767
26,844
James M. Clark, Transferee - Docket No. 8586-84
Addition to Tax [3]
Year
Income Tax
Sec. 6653(b)
1976 [4]
$ 14,640
$ 7,320
1977
22,197
11,098
1978
22,636
11,318
*95 Respondent's determination of the amount of tax in both cases has been "sustained" due to the imposition of sanctions against petitioner in an order dated October 3, 1985. There, accordingly, remains for our consideration only those issues upon which respondent bears the burden of proof, as follows: (1) *96 Whether petitioner and his corporation are liable for additions to tax under section 6653(b) or, in the alternative, sections 6651(a) and 6653(a); and(2) whether James M. Clark is a transferee within the meaning of section 6901. [5]
FINDINGS OF FACT The parties entered into a stipulation of facts and attached exhibits which were received in these consolidated [6] cases and are incorporated by *97 this reference. Petitioner resided at St. Louis, Missouri, at the time of the filing of both petitions in these consolidated cases. Petitioner's 1976, 1977 and 1978 Federal income tax returns were filed April 15, 1977, June 1, 1978, and June 21, 1979, respectively. Petitioner, prior to the years in issue, had acquired experience in real estate, with emphasis on rebuilding homes under government programs. During 1973, petitioner obtained $ 150,000 through the Small Business Administration and from Cass Federal Savings and Loan for construction of a motel at 1920 North Grand, St. Louis, Missouri. Construction was completed in 1975 and the motel's 19 [7] rooms were rented for periods of 3 or more hours during the years 1976, 1977 and 1978. Substantially all of the rental receipts were received in currency or cash. Petitioner was the sole shareholder and president of Clark Investment, incorporated in Missouri on May 10, 1973. Clark Investment operated the motel on land leased from petitioner, *98 who was the owner of the land. On January 1, 1979, the State of Missouri declared Clark Investment's corporate charter to be forfeited. Clark Investment's corporate Federal income tax returns for 1976, 1977 and 1978 were filed April 29, 1977, May 30, 1978, and May 31, 1979, respectively. Petitioner was the sole shareholder and president of Clark Foods, Inc. (Clark Foods), incorporated in Missouri on March 5, 1976. Clark Foods operated a restaurant under the name "Steak and Rib Restaurant," which was across the street from the motel. On January 1, 1978, the State of Missouri declared Clark Foods' corporate charter to be forfeited. Federal income tax returns were filed for Clark Foods' 1976 and 1977 taxable years and for the taxable period January 1, 1978, through March 31, 1978. Petitioner reported the restaurant's income and expenses for April 1, 1978 through December 31, 1978, on his individual Federal income tax return. All 1976, 1977 and 1978 Federal income tax returns for petitioner, Clark Investments and Clark Food were prepared by Bookkeeper's Business Service (Bookkeeper). Bookkeeper also prepared other Federal, state and local tax returns and reports, including monthly *99 profit and loss statements, various sales tax returns, motel sales and use tax returns, payroll tax returns and employment tax returns for the various entities. Monthly profit and loss statements were combined into year-end summaries from which the income tax returns were prepared. A daily sign-in register was maintained for all motel guests in which the number of hours of room rental, customer's name and the date were recorded. Cash receipts were kept in a cigar box and eventually in a cash register. The receipts for each 8-hour shift were counted and placed in an envelope upon which a notation was made of the amount taken in during the shift. Petitioner did not retain the envelopes, but the sign-in registers were retained. Petitioner was supplied with daily income forms from Bookkeeper. On some days petitioner would verify the amount of cash received by comparing it with the sign-in register. At the end of most months, petitioner would go through the envelopes and post the amounts to the daily income form. Occasionally, petitioner would estimate the amount of daily receipts based upon bank figures. On occasion, one of petitioner's two sisters, his brother or an employee *100 recorded the amount of receipts on the daily income forms. A large percentage of petitioner's transactions were accomplished by the use of cash. The monthly profit and loss statements, prepared by Bookkeeper, were based upon the daily income forms for Clark Investment. The monthly amounts were added to reach an annual gross receipts figure. The amounts of gross receipts reported on the profit and loss statements prepared by Bookkeeper exceeded the gross receipts reported in the Federal income tax return of Clark Investment, as follows: 1976
1977
1978
Gross receipts per
$ 143,107
$ 179,346
$ 215,511
Bookkeeper
Gross receipts
103,507
125,715
154,734
reported [8]
Excess of statements
39,600
53,631
60,777
over tax returns
Respondent, by means of a bank deposit-type analysis of several bank accounts *101 of petitioner and his solely owned corporations, determined that the income understatement of Clark Investment was $ 62,095, $ 72,327 and $ 69,324 for the 1976, 1977 and 1978 taxable years, respectively. Through further analysis, respondent determined that $ 31,389, $ 59,941 and $ 60,905 of the determined understatement constituted unreported dividends from Clark Investment to petitioner in his 1976, 1977 and 1978 personal taxable years, respectively. During the audit process, petitioner advised respondent's agent, Steven Grass (Grass) that the difference between the total of the monthly statements and the amount reported on the Federal income tax returns was attributable to estimates that were made in the monthlyy statements. Petitioner further explained that the reduction for Federal income tax purposes was attributable to actual calculations from the sign-in register and comparisons of the bank deposits. Petitioner did not offer a specific analysis of the register or bank accounts which reconciled the alleged difference. As a result of the differences, this case was referred to respondent's criminal tax investigators on two different occasions, but no criminal charges were *102 brought against petitioner. Clark Investment had unreported income in the amounts determined by respondent for the years in issue. Petitioner as sole shareholder and president of Clark Investment had complete control over Clark Investment and received unreported revenues from the company in the amounts of $ 31,839, $ 59,941 and $ 60,905 for taxable years 1976, 1977 and 1978, respectively. These unreported revenues or "transfers" were received without consideration and rendered the transferor (Clark Investment) insolvent and without assets with which to pay its tax liabilities. The transfers are in excess of the transferor's deficiencies in tax and additions to tax for the taxable years 1976 through 1978. Neither Clark Investment's nor petitioner's failure to report income during the years in issue was attributable to fraud. OPINION The remaining contested issue concerns whether the established underpayments of tax for the corporate and individual taxpayer were attributable to fraud within the meaning of section 6653(b). Respondent contends, essentially, that petitioner's dealing in cash and failure to keep proper records were intentional. Petitioner contends that although *103 he had poor records and little or no accounting or bookkeeping acumen, he was cooperative with respondent and did not intend any underpayment of tax. As a preliminary matter, we must consider respondent's proffer of a transcript (Exhibit CJ for identification) of an interview of Bob L. Stephens (Stephens), who was petitioner's and his business entities' accountant during some of the years under consideration. During the trial, respondent offered the Stephens transcript under Rule 804(b)(5) of the Federal Rules of Evidence, which is a "catchall" exception to the hearsay rule where a court can determine that a statement has "equivalent circumstantial guarantees of trustworthiness." The statement was taken by investigators or agents of respondent without the presence of petitioner or his attorney and Stephens was not cross-examined. The argument of the parties' attorneys in connection with Stephens' statement made it clear that they considered him to be a most significant witness upon whom respondent relied heavily in satisfying his burden of proof. Respondent did not prove to the Court's satisfaction that Stephens was not otherwise available to *104 testify in open court, or that the circumstances of Rule 804(b)(5) of the Federal Rules of Evidence were present, or that our discretion should be exercised. We refused to receive the "Stephens' statement" into evidence, but left the record open for 45 days within which respondent would be permitted to take and submit Stephens' deposition. [9] Following the trial, respondent again moved to request us to reconsider our ruling on Stephens' statement and for more time to take Stephens' deposition. We refused to reconsider our ruling, but left the record open for additional time to take and submit Stephens' deposition. During the extended period Stephens died. Respondent again moved for the entry of Stephens' statement into evidence and we denied it. [10]
*105 Respondent bears the burden of showing that "petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax." Sec. 6902(a). We have found that petitioner received transfers, without consideration from Clark Investment (rendering it insolvent) in amounts exceeding the tax and additions to tax determined by respondent and we hold that petitioner is a transferee of Clark Investment within the meaning of sections 6901 and 6902, as determined by respondent. [11]
The remaining issue for our consideration is whether petitioner is liable for the additions to tax for fraud under section 6653(b), individually and as a transferee. The burden of proving fraud is on respondent, and he must carry that burden by means of clear and convincing evidence. Sec. 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). This burden may be met by showing that the taxpayers intended to conceal, mislead, or otherwise prevent the collection of taxes, and that there *106 is an underpayment of tax. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Acker v. Commissioner,26 T.C. 107, 112 (1956). Where fraud is determined for multiple successive years, respondent must show that some part of the underpayment was due to fraud for each taxable year. Professional Services v. Commissioner,79 T.C. 888, 930 (1982); Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner, supra at 1123; Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proven by circumstantial evidence because direct proof of a taxpayer's intent is rarely available. Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), *107 affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner, supra at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States,317 U.S. 492 (1943); Gajewski v. Commissioner, supra at 200; Stone v. Commissioner, supra, at 223-224. Respondent contends that the evidence in this case reflects that petitioner and his transferor corporation: (1) caused substantial understatements of income over a 3-year period; (2) failed to keep adequate books and records; and (3) diverted the unreported income to petitioner's personal use. Petitioner, for purposes of argument, accepts the understatements which we have found pursuant to sanctions and admits that he failed to keep adequate books and records, but he asserts that he did not intentionally attempt to mislead, conceal or otherwise fail to report corporate or individual income. We agree with petitioner on the basis that respondent, based upon this record, has failed to show that petitioner fraudulently failed to report corporate or individual income for the years in issue. Misrepresenting facts, failing *108 to inform or otherwise misleading a taxpayer's return preparer or a revenue agent can be persuasive evidence of fraud. United States v. Newman,468 F.2d 791, 794 (5th Cir. 1972); Henry v. Commissioner,T.C. Memo. 1964-170, affd. 362 F.2d 640, 643 (5th Cir. 1966). Here, the opposite occurred. Petitioner, through inadequate bookkeeping methodology, inconsistent reporting techniques and slovenly estimates, claims to have overstated his receipts to his bookkeeper. Petitioner advanced this as an explanation for instructing his return preparer to reduce the gross receipts reflected on the bookkeeper's monthly summaries. Although petitioner's bookkeeping system is not adequate to support petitioner's contention that the gross receipts should have been reduced, he did anything but conceal his slovenly and contradictory record keeping activity. Petitioner was fully cooperative with respondent's agents, even after he was being criminally investigated. Petitioner's paper trail and cooperation [12] provided what appeared to be a fertile area for criminal investigation, which, for reasons unknown to us, did not materialize. Petitioner's explanation *109 of the differences between the returns and monthly summaries was plausible, but he did not adequately prove that respondent's determination regarding the understatement was in error. [13] Petitioner paid numerous expenses by means of cash and it is possible that he did not record or take advantage of the deductions because of his poor bookkeeping method or lack of bookkeeping. *110 We do not condone petitioner's failure to properly account for and report income to respondent as he is legally required to do. Nor do we hold that sloppy or inadequate records are an appropriate or effective defense. We simply are unable to find, based upon this record, that the necessary indicia of fraud have been shown. Respondent has failed to carry his burden of proof. As stated in one of our memorandum opinions: [14]
In summary, we have examined the entire record before us and find that respondent has not met his burden of proof. Admittedly, a strong suspicion of fraud might arise from the record before us. However, the standard of proof required of respondent in this case, proof by clear and convincing evidence, is a high one. "[C]ourts will not sustain findings of fraud upon circumstances which at most create only suspicion." Ross Glove Co. v. Commissioner,60 T.C. 569, 608 (1973). [Quoting 10 J. Mertens, Law of Federal Income Taxation, sec. 55.10, p. 46 (1970); fn. refs. omitted.] Respondent, in his answers for both consolidated cases pled, in the alternative to the addition *111 under section 6653(b) (fraud), additions to tax under section 6653(a) (negligence) in all years and section 6651(a) (delinquency) in some years. Having found that respondent failed to carry his burden of proving additions under section 6653(b), we must now consider whether respondent has carried his burden of proving the alternative additions to tax which were raised in the answer and do not come within the presumption of correctness afforded to respondent's determinations, as set forth in the notices of deficiency. The evidence in this record amply supports a finding of negligence, intentional disregard of the rules and regulations, and delinquent filing, as alleged by respondent, and we so find. Petitioner's admitted failures to keep adequate records would in and of itself be sufficient to find an addition to tax in each year under section 6653(a). In order to calculate the amounts of the alternative additions to tax asserted by the respondent and found due herein, Decisions will be entered under Rule 155 in docket Nos. 8585-84 and 8586-84.
Footnotes
1. Respondent, in his answer, pled additions to tax in all 3 years under sec. 6653(a) and under sec. 6651(a) for 1977 and 1978, in the alternative to sec. 6653(b) determined in the notice of deficiency, if we should find that sec. 6653(b) is not applicable. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to this Court's Rules of Practice and Procedure. ↩
3. Respondent, in his answer, pled additions to tax in all 3 years under secs. 6651(a) and 6653(a), in the alternative to sec. 6653(b) determined in the notice of transferee liability, if we should find that sec. 6653(b) is not applicable. ↩
4. Respondent, in his answer, alleged that increased deficiencies were due from the transferor and, accordingly, that increased liabilities were due from the transferee for the taxable year 1976, as follows: $ 1,296 in income tax and a $ 648 addition to tax under sec. 6653(b). The total increased deficiency/liability being determined and/or alleged by respondent for the 1976 taxable year is: $ 15,936 in income tax and a $ 7,968 addition to tax under sec. 6653(b). [Text Deleted by Court Emendation]. The parties have stipulated that the amount generating the increased amount in income determined by respondent for 1976 is correct.↩
5. Petitioner, on brief, stated that the only issue was the fraud addition in both cases. We assume that petitioner's failure to raise the transferee issue was intended as a concession of that issue upon which respondent has the burden of proof. There is sufficient support for finding transferee liability in respondent's unanswered requests for admission, which under Rule 90 have been deemed admitted. In any event, petitioner had been sanctioned in both of these consolidated cases for failing to respond to discovery. The sanction was a holding that all matters upon which petitioner had the burden of proof were determined adverse to petitioner, leaving respondent to present evidence on any issues upon which he had the burden of proof, which are the remaining two issues in these cases. ↩
6. These cases were consolidated for purposes of trial, briefing and opinion. ↩
7. Sometime during 1978, 23 additional rooms were completed so that the motel had 42 rooms to rent. ↩
8. Although Clark Investment's gross receipts were reported for 1976 and 1977 Federal income tax purposes as $ 103,507 and $ 125,715, its receipts for the same years were included in a report for the Office of the Comptroller, St. Louis, Missouri, for Hotel and Motel Gross Receipts Tax as $ 132,797.57 and $ 163,980.53, respectively. ↩
9. At the conclusion of the trial, respondent again offered Stephens' statement solely for purposes of impeachment of petitioner. Respondent argued that the hearsay rule did not apply to matters offered for impeachment purposes and further, that the statement was not being offered for the truth of the contents, but merely to show contradiction. We rejected respondent's offer and suggested that respondent may use the statement to refresh or impeach Stephens at the time of the deposition. ↩
10. We have reviewed Stephens' statement and do not believe that its inclusion in this record would have changed the outcome. It merely confirms the laxity of petitioner's record keeping activity. ↩
11. Our findings concerning transferee liability were derived from respondent's unanswered admissions, filed Nov. 27, 1986, and numbered 128 through 133. ↩
12. Petitioner and his bookkeeper provided records which reflected different figures. The differences between the books, monthly statements, Federal income tax returns and local sales tax returns were all readily provided to respondent. ↩
13. Petitioner was denied the opportunity to further contest respondent's income determination because of petitioner's failure to comply with the Court's rules and orders. We note, however, that it was petitioner's attorney, Edward R. Joyce, whose appearance was entered and upon whom all pertinent papers had been served. Moreover, petitioner was forced to obtain additional counsel after trial to prepare and present his position on brief. We are saddened by the possibility that petitioner was not made aware of the discovery requests, failure to respond and the Court's order and rules which were not complied with, but we must assume that petitioner is well represented, unless shown otherwise. ↩
14. Bishop v. Commissioner,T.C. Memo. 1986-2↩.