**UNITED STATES of America, Appellee,**

v.

**Harold T. BRADLEY,**
**Defendant-Appellant.**

**No. 1480, Docket 86–1123.**

United States Court of Appeals,
Second Circuit.

Argued July 15, 1986.

Decided Feb. 23, 1987.

Nanette Dembitz, New York City, for Defendant-Appellant.

Helen Gredd, Asst. U.S. Atty. (Bruce A. Green, Asst. U.S. Atty., and Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., New York City, of counsel), for Appellee.

Before WINTER and MAHONEY, Circuit Judges, and CABRANES, District Judge.*

* The Honorable José A. Cabranes, United States District Judge for the District of Connecticut, sitting by designation.

**JOSÉ A. CABRANES, District Judge:**

Harold T. Bradley was found guilty after a jury trial before Judge Robert J. Ward in the United States District Court for the Southern District of New York on one count of making false statements in connection with a loan application to a federally insured bank in violation of 18 U.S.C. § 1014 and one count of bank larceny in violation of 18 U.S.C. § 2113(b). He was sentenced by Judge Kevin Thomas Duffy to two years on the first count and ten years on the second, the sentences to run concurrently.[1] On appeal Bradley argues (1) that Judge Ward erred in his charge to the jury on 18 U.S.C. § 2113(b) by failing to require a finding by the jury that the bank actually relied upon his false statements in making the loan; (2) that 18 U.S.C. § 2113(b) is not applicable to a taking of bank funds by a person who made false statements on a loan application in order to receive such funds; (3) that even if Section 2113(b) may be applied to Bradley's conduct, he cannot be charged under both statutes because Section 1014 is a lesser included offense of Section 2113(b); (4) that Congress intended that in the circumstances presented only Section 1014 be applied; (5) that Judge Duffy's comments regarding the leniency of the judges who had previously sentenced Bradley and the effect of Bradley's crimes on his victims reflected reliance upon improper sentencing considerations; and (6) that Judge Duffy did not make findings or determinations with respect to controverted items in the presentence report prior to imposing sentence as prescribed by Fed.R.Crim.P. 32(c)(3)(D).

We affirm Bradley's conviction, and we find no error in Judge Duffy's comments on the defendant's prior record and on the effect of his crimes; however, we remand to Judge Duffy for the entry of findings, or disclaimers of reliance, upon disputed items in the presentence report pursuant to Fed.R.Crim.P. 32(c)(3)(D).

**BACKGROUND**

The facts proved at trial and largely undisputed on appeal may be briefly summarized.

On May 23, 1984, Bradley telephoned the office of Alfred Brittain, the Chairman of the Board of Directors of Bankers Trust Company ("Bankers Trust"), a federally insured bank in New York City, and spoke to Brittain's secretary, Christine Powell. Bradley told her that he was relocating from the West Coast and wanted to open a personal account and obtain a loan for the purchase of real estate in New Jersey. In the course of the conversation, Bradley suggested to Powell that he was acquainted with John Brooks, a member of the board of directors of Bankers Trust. Powell reported Bradley's telephone call to the Private Clients Lending Group, a unit of Bankers Trust which specializes in loans to high-income individuals.

As a result of that referral, Robert Davis, a vice president of Bankers Trust assigned to the Private Clients Lending Group, telephoned Bradley and arranged to meet with him on May 29, 1984. The meeting took place at a Park Avenue location which Bradley identified as his office. At that meeting Bradley informed Davis, as he had informed Powell, that he had just relocated from California and was seeking a loan for the purchase of real estate in New Jersey. Bradley also told Davis that he was currently living on a "family compound" in New Jersey, but that he wished to buy his own home on the Jersey shore and would require a loan of $85,000 in order to do so.

When questioned by Davis about his financial status, Bradley stated that he had a net worth of at least $2 million, and that his brother would repay him a substantial amount of money in four to six months, thus enabling him to repay the Bankers Trust loan. In response to an inquiry from Davis about whether it had been Alfred Brittain who had recommended Bradley to Bankers Trust, Bradley replied in the af-

---

1. This case was originally assigned to Judge Duffy, but was transferred to Judge Ward for trial because of calendar concerns.

firmative, stating that "Al and I go back a long way together."

At the close of the meeting, Bradley signed a demand note and account signature cards, and was given a blank financial statement with the request that he complete it and submit it to the bank. Instead of returning the financial statement, a day or two later Bradley submitted to Davis a balance sheet listing assets of $2,805,700 and liabilities of $34,430, for a total net worth of $2,771,270. On May 31, 1984, Davis approved the loan of $85,000, crediting that amount to the newly-opened Bankers Trust checking account in Bradley's name.

This loan provided the only funds ever deposited in the checking account. Bradley wrote checks totalling $32,221.10 on the checking account—including $18,000 in checks made out to "cash"—over a period of several months before the bank closed the account. He made no repayments either before or after the issuance of the indictment on November 1, 1985.

At trial the Government presented evidence to show that Bradley had never met Alfred Brittain; that his only brother had never borrowed any money from him; that the office at which Bradley had met Davis had been occupied by Bradley two weeks earlier with no down payment of rent; that the only rental payments Bradley made in connection with that office were with two checks drawn on the Bankers Trust account in early June 1984; and that Bradley subsequently abandoned the office space, leaving behind accrued rental charges totaling $11,715.

In addition, evidence was presented that in April 1983, thirteen months before Bradley's meeting with Davis, Bradley filed a petition in bankruptcy in the United States Bankruptcy Court for the District of New Jersey, in which he had stated that his liabilities exceeded his assets by more than $100,000, and that in May 1983 Bradley filed a supplemental bankruptcy document providing a twenty-four page list of judgments that had been entered against him and his wife. The Government also offered sworn testimony given by Bradley in the Bankruptcy Court on December 6, 1984, stating that as of October 1983, after not having worked for two years, he was starting from "ground zero" financially, and that for the next six or seven months—i.e., through at least April 1984—he had had no income whatsoever. Immediately before resting, the Government offered a stipulation between the parties indicating that intent and knowledge were not at issue in the case.

At sentencing, counsel for Bradley challenged several assertions in the presentence report: that Bradley had been charged with two earlier offenses and convicted of one of them (counsel did not challenge a number of other convictions); that he had not graduated from college; that he had abused his son; and that he liked to dress up in women's clothing.

## DISCUSSION

### I.

#### The Jury Instruction on 18 U.S.C. § 2113(b)

Title 18, U.S.C. § 2113(b) prohibits the "tak[ing] and carry[ing] away, with intent to steal or purloin, [of] any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, management, or possession of any bank." The statute is not limited to common-law larceny but also includes obtaining money under false pretenses. *Bell v. United States*, 462 U.S. 356, 361, 103 S.Ct. 2398, 2401, 76 L.Ed.2d 638 (1982) ("*Bell*").

The trial judge instructed the jury that the elements of the offense were (1) that the bank was federally insured; (2) that the defendant took and carried away money that had been in possession of the bank; and (3) that the defendant took the money intentionally, knowing that he was not entitled to it and with an intent to steal it. He also explained to the jury that the statutory phrase "steal and purloin" could include "obtaining money under false pretenses." The parties had stipulated that the bank was federally insured and that the defendant had the requisite criminal intent, and the trial judge also instructed the jury

that "if you find that the defendant knowingly made false statements to the bank in connection with his loan application for the purpose of influencing the bank's action on that application, then you may conclude without further evidence that the defendant took the money with the intent to steal and purloin it."

 On appeal, Bradley argues for the first time that Judge Ward committed "a grave error of law" in failing to charge that he could be found guilty only if the bank *relied* on his false statements in turning over funds to him. Even if we assume for the argument that 18 U.S.C. § 2113(b) does require proof that the bank relied on Bradley's false statements in extending him credit, defense counsel at trial neither objected to the charge that the statutory phrase "steal and purloin" includes obtaining money by false pretenses nor requested an instruction incorporating the reliance element.[2] *See* Fed.R.Crim.P. 30. Accordingly, Bradley is barred from raising the issue on appeal unless Judge Ward can be said to have committed "plain error" in his instructions. Fed.R.Crim.P. 52(b). "Plain error" is error going "to the very essence of the case," *United States v. Calfon*, 607 F.2d 29, 31 (2d Cir.1979) (per curiam) (citation omitted), *cert. denied*, 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980), and "so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). The labeling of a trial judge's instruction as "plain error" is, of course, "a power to be exercised most sparingly." *United States v. Wilkinson*, 754 F.2d 1427, 1432 (2d Cir.) (citation omitted),

*cert. denied sub nom. Shipp v. United States*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).

The essence of criminal liability under Section 2113(b) is that the defendant have taken and carried away money or other property from a federally insured bank with the intent to steal. Judge Ward's instructions clearly required the jury to convict only if they found these necessary elements beyond a reasonable doubt. The failure of the trial judge to instruct the jury on the element of reliance cannot be characterized as going "to the very essence of the case." Accordingly, even if an instruction incorporating a reliance element arguably should have been given, Bradley's failure to object at trial resulted in a waiver of any claim of error on appeal.

Even if one assumes for the argument that the absence of an objection or of a request to charge on the reliance element at trial did not constitute a waiver, Bradley's substantive argument on the reliance issue is also without merit. Bradley assumes that in holding that Section 2113(b) included the crime of common law larceny by false pretenses, the Supreme Court in *Bell* intended to *limit* that statute's definition of "steal and purloin" precisely to these common law elements. In fact, the general thrust of *Bell* is exactly the opposite. Contrary to Bradley's interpretation, the Court in *Bell* did not suggest that the reliance element of common law larceny by false pretenses is invariably required by Section 2113(b); it merely concluded that the defendant's conduct, although described as the crime of false pretenses, included the requisite elements of Section 2113(b)—taking and carrying away money

---

**2.** Bradley was represented by different counsel at trial and on appeal. After Bradley's trial counsel was allowed to withdraw, Ms. Dembitz was appointed counsel for this appeal pursuant to the Criminal Justice Act. After Ms. Dembitz's brief was filed, Mr. Bradley sought to delay consideration of the appeal on the grounds that he desired to retain private counsel. Private counsel not having been retained, we proceeded to hear the appeal which was argued by Ms. Dembitz. After the appeal was heard, Mr. Bradley again indicated his dissatisfaction with his representation and we granted permission to

him to file a brief, either *pro se* or through counsel, on or before September 30, 1986. No brief was filed by that date, and Mr. Bradley again sought to delay a decision by requesting more time for health reasons. He stated that he would submit a brief "as soon as possible." As of the present date, no brief has been filed. We have independently reviewed the record and determined that Mr. Bradley was well represented on appeal and that no meritorious issue was overlooked. We see no reason to delay a decision any further.

from a bank with intent to steal it. *Bell,* 462 U.S. at 361–62, 103 S.Ct. at 2401–02. Bradley's conduct may fairly be described the same way, whether or not it satisfies the common law definition of false pretenses.

Our reading of Section 2113(b) is further supported by the Supreme Court's examination of the statute's legislative history, which led the Court to conclude that Congress intended to avoid undercutting Section 2113(b)'s remedial purpose "on the basis of an arcane and artificial distinction more suited to the social conditions of 18th-century England than the needs of 20th-century America." *Id.* at 362, 103 S.Ct. at 2402. The Court thus concluded that Section 2113(b) cannot be read as simply a codification of the common law, but rather, as a manifestation of "the congressional purpose ... to protect banks from those who wished to steal banks' assets—even if they used no force in doing so." *Id.*

In sum, the jury was properly instructed in the three elements of the crime of bank larceny in violation of 18 U.S.C. § 2113(b). Regardless of how Bradley may have obtained access to the funds at issue, he violated Section 2113(b) when he withdrew funds from a federally-insured bank with the intent to steal those funds.[3] There is no support in the statute or the case law for any requirement that the government prove that the bank relied upon the defendant's misrepresentations before turning over the money to him, and Bradley's reliance on *Bell* for this proposition is completely misplaced.[4]

**3.** The government proceeded on the theory that Bradley took and carried away money within the meaning of 28 U.S.C. § 2113(b) by writing checks on his account at Bankers Trust. We need not, therefore, decide whether the "taking and carrying away" occurred when the loan was approved and the funds put into an account in Bradley's name. Bradley was in no way injured by the government's legal theory because it required proof of the writing of checks on the account as well as proof of the circumstances in which the loan was obtained.

**4.** Bradley's reliance upon *Bell* for the arguments that Section 2113(b) should be read narrowly so as to apply only to "bank robberies and incidental crimes" and that conduct such as his should be punished under state law rather than federal

## II.

*Applicability of 18 U.S.C. § 2113(b)*

### A.

■■■ Bradley next argues that Section 2113(b) should not be read to encompass a "taking or carrying away" effected by the making of false statements in loan applications because 18 U.S.C. § 1014[5] specifically proscribes the making of false statements in loan applications and therefore Congress must not have intended Section 2113(b) to reach such conduct. It is well established, however, that when two statutes overlap, the newer statute (here, Section 1014) should be construed to coexist with the older one, provided there is no contrary legislative intent and no repugnancy between the provisions. *United States v. Batchelder,* 442 U.S. 114, 118–22, 99 S.Ct. 2198, 2201–03, 60 L.Ed.2d 755 (1979). Moreover, the fact that one statute is specifically addressed to acts constituting a particular crime does not preclude punishment of those acts under a more general statute.

[A]bsent evidence of congressional intent to repeal, when a new statute overlaps a portion of an older one, the two statutes should be permitted to coexist unless the two are mutually exclusive....

. . . . .

[T]he mere existence of a later enacted, specific statute does not implicitly repeal the overlapping portion of an earlier, general statute....

law is predicated upon the same misreading of *Bell* already addressed by this court in the discussion of the jury instruction. As such, we note only that the Supreme Court in *Bell* implicitly rejected similar arguments. *Bell, supra,* 462 U.S. at 361–62, 103 S.Ct. at 2401–02.

**5.** Title 18 U.S.C. § 1014 reads, in pertinent part:

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation ... upon any ... loan ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

*United States v. Jackson,* 805 F.2d 457, 461 (2d Cir.1986); *see also United States v. DeFiore,* 720 F.2d 757, 761–62 n. 2 (majority opinion), 766 n. 1 (Winter J., concurring in part and dissenting in part) (2d Cir.1983) (use of wire fraud statute to punish interstate transportation of untaxed cigarettes even though the detailed requirements under a statute specifically dealing with the interstate transportation of untaxed cigarettes were not met), *cert. denied,* 466 U.S. 906, 104 S.Ct. 1684, 80 L.Ed.2d 158 (1984).

### B.

■ Bradley contends that he cannot be convicted under both Section 1014 and Section 2113(b) because Section 1014 is a lesser included offense of Section 2113(b), and therefore, conviction for both offenses violates the Double Jeopardy Clause of the Fifth Amendment.[6] The principle is well established, however, that

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) *("Blockburger").* "The *Blockburger* rule is a principle of statutory construction used to determine whether Congress has provided that two statutory offenses may be punished separately." *United States v. Langella,* 776 F.2d 1078, 1081 (2d Cir.1985) (citations omitted), *cert. denied,* —— U.S. ——, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). The test is applied to the statutory definition, not to the proof in a particular case:

> "[T]he Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a sub-

stantial overlap in the proof offered to establish the crimes."

*Albernaz v. United States,* 450 U.S. 333, 338, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981) (quoting *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975)); *United States v. Biasucci,* 786 F.2d 504, 516 (2d Cir.1986) ("If each *statute* requires proof of a fact that the other does not, the *Blockburger* test is satisfied, even if the same proof is used at trial to establish both crimes." [emphasis in original] ); *United States v. Langella, supra,* 776 F.2d at 1082 ("[defendant's] argument based on *Blockburger* would fail even if both convictions were founded on identical conduct.... *Albernaz* requires us to focus on the provisions of the statutes involved, rather than on the evidence adduced at trial, to determine whether the punishment appellant received was proper under *Blockburger.*"); *see also United States v. Woodward,* 469 U.S. 105, 108, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985) (per curiam) (holding that two statutes were distinct under the *Blockburger* test because proof of one offense did not in all cases "necessarily" include proof of the other).

Applying the *Blockburger* test to the case at bar, it is clear that each of the two statutes at issue "requires proof of a fact which the other does not." For example, Section 2113(b) requires a taking of money (or other property) while Section 1014 does not; Section 1014 requires the making of false statements on a loan application, while Section 2113(b) does not; Section 2113(b) requires an intent to steal, whereas Section 1014 requires an intent to influence a bank's actions on a loan application. Accordingly, Bradley could properly be convicted and punished under both Section 1014 and Section 2113(b).

### III.

#### Sentencing

Bradley argues that the judge's comments at sentencing reveal that the maxi-

---

6. The Double Jeopardy Clause of the Fifth Amendment provides that

[no person shall] be subject for the same offence to be twice put in jeopardy of life or limb[.]

mum sentence was improperly imposed, in that it was designed "at least in part, to compensate for the assumed deficiencies in sentencing by previous judges," Appellant's Brief at 17, and was based upon erroneous assumptions concerning the effects of Bradley's crimes on his victims. *Id.* at 18. Finally, Bradley claims he was sentenced in violation of Fed.R.Crim.P. 32(c)(3)(D), which requires the sentencing judge to make findings or to determine that no findings are necessary with respect to controverted matters in the presentence investigation report prepared for the court by the United States Probation Office.[7] He contends that these errors require that he be resentenced before another judge.[8]

## A.

■ The claim that the sentencing judge's comments reveal that he improperly evaluated Bradley's prior record and the effect of Bradley's crimes on his victims is without merit. It is beyond doubt, as appellant concedes, that the presentence report may include, and a sentencing judge may consider, a wide range of information concerning a defendant at sentencing, including "any prior criminal record." Rule 32(c)(2)(A); Appellant's Brief at 16. *See Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949) ("Highly relevant—if not essential—to [a judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."); *United States v. Tucker,* 404 U.S. 443, 446–47, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (Before determining what sentence to impose, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider,

or the source from which it may come."); *United States v. Roland,* 748 F.2d 1321, 1327 (2d Cir.1984) (sentencing judge "may consider even evidence of crimes of which a defendant is acquitted"); *United States v. Ochoa,* 659 F.2d 547, 549 (5th Cir.1981) ("The sentencing judge has wide discretion, largely unlimited in scope, in the kind and source of the information he considers in determining punishment."), *cert. denied,* 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982). It is thus well within the range of his permissible discretion for a sentencing judge to consider, as Judge Duffy did here, whether previous efforts to control the defendant's behavior have had their intended effect. If this were not the case, the concept of the sentence as a specific deterrent would be undermined. Furthermore, it goes without saying that the effects of the criminal's activities on his victims is another major, and wholly legitimate, subject of the sentencing judge's consideration. Rule 32(c)(2)(C), (D). We do not denigrate the seriousness of Bradley's claim that alcoholism contributed to his criminal career when we conclude that Bradley's repeated convictions for the same type of offense gave the sentencing judge ample reason to doubt the sincerity of any claim of cure, contrition, or reform. In sum, we find no support for the claim that the sentencing judge stepped beyond the bounds of his discretion in his evaluation of the information before him or in his concern for the victims of Bradley's repeated violations of the law.

## B.

■ The final issue raised by Bradley concerns the sentencing judge's response at sentencing to allegations by Bradley's

---

**7.** Fed.R.Crim.P. 32(c)(3)(D) states, in full:

If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A writ-

ten record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

**8.** Bradley's appeal brief only requests resentencing; however, at oral argument, Bradley's counsel argued that in the event of a remand for resentencing, the matter should be assigned to a different judge.

trial counsel of a number of inaccuracies in the presentence report. Faced with a presentence report that showed sixteen prior arrests and seven prior convictions for fraud-related offenses, Bradley's counsel questioned whether Bradley had actually been arrested for one listed offense and convicted of another. He also questioned descriptions of some aspects of Bradley's personal life. At the same time, however, Bradley's counsel conceded the accuracy of the description of the other arrests and convictions listed in the presentence report. Indeed, defense counsel for the most part focussed his argument at sentencing on alcoholism as the root of Bradley's problems, not upon these alleged inaccuracies in the presentence report.

In the particular circumstances presented here, the alleged inaccuracies in the presentence report are virtually *de minimis,* and the particular lapse of the sentencing judge in failing to make findings or to disclaim reliance upon disputed items in the presentence report is a matter of little apparent consequence; however, a decision of this court issued one week *after* the sentencing in this case, *United States v. Ursillo,* 786 F.2d 66, 68–69, 71 (2d Cir.1986), clearly established the mandatory character of Fed.R.Crim.P. 32(c)(3)(D), which directs the sentencing judge either to make findings with respect to the alleged inaccuracies in a sentencing report or explicitly to state that he did not consider the contested matters in his determination of sentence. *See also United States v. Navaro,* 774 F.2d 565 (2d Cir.1985) (per curiam) (no violation of Rule 32(c)(3)(D) when district judge explicitly disclaimed reliance upon the alleged inaccuracies in his determination of the sentence to be imposed) (citing *United*

*States v. Ibarra,* 737 F.2d 825, 827 (9th Cir.1984)).

■■■■ While we hold that the failure of the district judge to comply with the literal requirements of Rule 32(c)(3)(D) requires that the case be remanded, we note that not every technical violation of Rule 32(c)(3)(D) mandates resentencing. *See United States v. Eschweiler,* 782 F.2d 1385, 1390 (7th Cir.1986) ("[R]equiring resentencing when the record is clear that the sentencing judge did not rely on a contested matter does not further the purpose of Rule 32(c)(3)(D)"); *United States v. Ursillo, supra,* 786 F.2d at 71 (when substantive requirements of Rule 32(c)(3)(D) are met, mere ministerial failure to attach the transcript of a sentencing hearing to the presentence report does not support claim to revision of report); *United States v. Castillo-Roman,* 774 F.2d 1280, 1285 (5th Cir.1985) (same). In these circumstances we hold that no more is required than a remand to the sentencing judge for appropriate findings or disclaimers of reliance upon disputed items in the presentence report, as required by Rule 32(c)(3)(D). Resentencing and formal factual findings will be necessary only if, upon remand, Judge Duffy indicates that the disputed items were taken in account in the determination of Bradley's original sentence.[9]

## CONCLUSION

The court having considered each of Bradley's six arguments, and having found all but one to be unavailing, the judgment is affirmed and the case is remanded for

---

**9.** In light of our rejection of Bradley's claim that he must be resentenced, it follows *a fortiori* that he cannot be resentenced before another judge. However, because we have left open the possibility that formal resentencing may ultimately take place, we take this opportunity to note that any resentencing need not be conducted by a different judge.

As a general rule, even when a sentencing judge has been shown to have held erroneous views or made incorrect findings—which is not the case here—resentencing before a different

judge is required only in the rare instance in which the judge's fairness or the appearance of the judge's fairness is seriously in doubt. *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (per curiam) (en banc). The claimed inaccuracies in the presentence report at issue here, and the record of the sentencing hearing as a whole, suggest no impropriety or unfairness whatsoever; accordingly, if, upon remand, resentencing is ultimately found to be necessary, it is appropriate that the resentencing be before Judge Duffy.

determinations pursuant to Fed.R.Crim.P. 32(c)(3)(D).[10]

---

**10.** On remand, a determination by the sentencing judge that the disputed items were or were not taken into account in determining the defendant's sentence should be recorded in a memorandum provided to all counsel of record and ordered attached to all copies of the defendant's presentence investigation report, as required by Rule 32(c)(3)(D) (*see* note 7, *supra* ). If the sentencing judge reports that he did consider the disputed items in his determination of the defendant's sentence, he should then promptly conduct a hearing at which he can make the findings required by Rule 32(c)(3)(D)(i). After the entry of such findings, the judge should proceed to resentence the defendant.

